## ARGUED AND DETERMINED

### IN THE

# SUPREME COURT

### OF

# NORTH DAKOTA

---

MIDWAY CO-OPERATIVE ELEVATOR COMPANY, Appellant,
v. GREAT NORTHERN RAILWAY COMPANY, Respondent.

(169 N. W. 494.)

**Federal Constitution — commerce — regulation — Congress — powers.**

1. The Federal Constitution grants power to Congress to regulate commerce and in executing this power it may enact such laws and provide such regulations as national interest may demand.

**Interstate commerce — regulation of — by Congress — power — supreme — state regulations — in conflict — superseded.**

2. The regulations of interstate commerce provided by Congress are supreme, and any state regulations in conflict therewith or covering the same subject are superseded thereby.

**Congress — authority — extends to every part of interstate commerce — to instrumentality — to agency — authority cannot be thwarted — by commingling interstate and intrastate commerce.**

3. The authority of Congress extends to every part of interstate commerce

---

NOTE.—Authorities passing on the question of power of state court to pass upon interstate rates are collated in a note in 28 L.R.A.(N.S.) 108, where it is held that a state court has no power to pass upon the reasonableness, fairness, or justice of interstate rates. As to power of state court to review rulings of Interstate Commerce Commission, see note in L.R.A.1917E, 919.

41 N. D.—1.

and to every instrumentality or agency by which it is carried on; and a full control by Congress over the acts committed to its regulation is not to be denied or thwarted by the commingling of interstate and intrastate operations.

**Interstate Commerce Commission — has complete and exclusive jurisdiction — fixing and regulating rates — may settle discriminatory, preferential, or prejudicial matters — complaints — courts may not hear and pass upon — general rule.**

4. The Interstate Commerce Commission has exclusive jurisdiction to determine whether a regulation or a practice affecting rates or matters sought to be regulated by the Interstate Commerce Act is unjust or unreasonable, unjustly discriminatory, preferential or prejudicial, and the courts may not, as an original question, hear complaints and pass upon any of the administrative questions which the Interstate Commerce Act has invested the Interstate Commerce Commission with power to determine.

**Common carrier — equipments to be supplied — services rendered — shipments of grain in bulk — lining of cars for saving — all are matters which concern rate-making — are administrative — should be submitted to commission for inquiry — before resort to courts.**

5. The character or equipment which a carrier must provide and allowances which it must make for instrumentalities supplied, and services rendered, by the shipper—such as lining cars used in transporting carload shipments of grain in bulk—are problems which directly concern rate making and are peculiarly administrative on which there should be an appropriate inquiry by the Interstate Commerce Commission before being submitted to a court.

**Commerce commission — preliminary action by — must precede submission to courts — cost of lining of cars — for purpose of shipping grain — action by shipper to recover — before submitting question to commission — court has no jurisdiction.**

6. "Without preliminary action by the Interstate Commerce Commission a state court has no jurisdiction of an action by a shipper to recover from an interstate carrier sums expended by him (the shipper) in lining and coopering cars furnished by the carrier for interstate carload shipments of grain in bulk, the applicable duly filed interstate rate schedules making no reference to allowances therefor."

Opinion filed May 21, 1918.    Rehearing denied November 16, 1918.

From a judgment of the County Court of Cass County, *Hanson, J.,* plaintiff appeals.

Affirmed.

*William Lemke,* for appellant.

The plaintiff lined the cars and placed them in proper condition for the safe transportation of the grain loaded into them, at his own expense. These expenses were necessary and were incurred for the mutual benefit and protection of both parties. Comp. Laws 1913, § 4707.

When the commerce begins is determined not by the character of the commodity, nor by the intention of the owner to transfer it to another state for sale, nor by his preparation of it for transportation, but by its actual delivery to the common carrier for transportation, or the actual commencement of its transfer to another state. Re Green, 52 Fed. 105; 62 Fed. 829; The Daniel Ball, 10 Wall. 557; Coe v. Errol, 116 U. S. 517.

It was the duty of defendant both under statutory and common law, to furnish suitable cars for use and for the purpose intended. Our statute merely declares the common-law rule. Comp. Laws 1913, § 4707.

It was not necessary that these matters and plaintiff's claim be first submitted to the commerce commission, for the reason that the right to recover exised under the common law, and our statute is but a redeclaration of such law, and is intended to aid in the enforcement of common rights and duties. Missouri P. R. Co. v. Larrabee Flour Mills Co. 211 U. S. 612.

Until a railway car has once been appropriated to interstate commerce use, it is subject to state control. Missouri P. R. Co. v. Larrabee Flour Mills Co. supra; Northern Belle, 9 Wall. 529; N. O. & T. P. R. Co. v. N. K. Fairbanks & Co. 90 Fed. 467; Louisville & N. R. Co. v. Dies, 18 S. W. 266; Chicago, A. R. Co. v. Davis, 159 Ill. 53; 5 Am. & Eng. Enc. Law, 2d ed. 175; Hoosier Stone Co. v. Louisville C. R. Co. 131 Ind. 575; White v. Cincinnati, etc. R. Co. 89 Ky. 478; Terre Haute etc. R. Co. v. Crews, 53 Ill. App. 50; Beard v. St. Louis, etc. R. Co. 79 Iowa, 527; Pratt v. Ogdensburg, etc. R. Co. 102 Mass. 557; Alabama, etc. R. Co. v. Searles, 71 Miss. 774; Chicago, etc. R. Co. v. Denver, 45 Neb. 307; 10 C. J. p. 85.

Our statute is not in conflict with the common law, but rather is declaratory thereof; neither does it conflict with the Interstate Commerce Act. Interstate Commerce Act, Comp. Stat. § 8563, ¶¶ 1, 2, § 8595, ¶ 22; Pennsylvania R. Co. v. Conman Shaft Coal Co. 242

U. S. 121; Texas & P. R. Co. v. Abilene Cotton Oil Co. 204 U. S. 426, 446, 447; Pennsylvania R. Co. v. Puritan Coal Co. 237 U. S. 121, 129; Pennsylvania R. Co. v. Clark Coal Co. 238 U. S. 472; Atlantic Coast Line R. Co. v. Masurky, 216 U. S. 132.

*Murphy & Toner,* for respondent.

The statement of the case, as denominated by our statute, cannot be allowed and settled except upon notice. A so-called statement otherwise obtained and filed should be stricken from the record. 3 Cyc. 36, 43; Comp. Laws 1913, § 7655.

In the absence of a proper statement, there can be no review by the Supreme Court. Wisner v. Field, 11 N. D. 257; Davis v. Jacobson, 13 N. D. 430; State v. Schofield, 13 N. D. 664; Schonberg v. Long, 15 N. D. 506; Murphy v. Foster, 15 N. D. 556; French v. Ry. Co. (S. D.) 128 N. W. 498.

The time for settling a statement cannot be extended except for good cause shown. Folsom v. Norton, 19 N. D. 722.

This court has no jurisdiction to entertain an application for an extension of the time for settling a statement. Aultman Taylor Co. v. Clausen, 18 N. D. 483.

In a proper case the record may be remanded for correction. But in this case there is nothing to be corrected, because there is nothing filed which bears semblance to a statement. Remanding from this court is for the purpose of enabling the lower court to make or allow proper corrections, not to make a new record. Bannier v. French, 8 N. D. 319, 325; Moore v. Booker, 4 N. D. 543, 556; Coulter v. G. N. R. Co. 5 N. D. 568–586.

It is discretionary with the trial court in proper cases to grant an extension of time in which to do these necessary things; but the supreme court has no jurisdiction to settle a statement, or to extend time therefor, where no application for such purpose was made to the trial court. Co. v. Clausen, 18 N. D. 483; Folsom v. Norton, 19 N. D. 722.

Plaintiff in this case repaired the inside of the cars furnished him for the shipment in bulk of grain. He brings this action to recover the cost or reasonable value of such repairs. He did not first submit his claim to the Interstate Commerce Commission, therefore the courts have no jurisdiction and the action should be dismissed. Such

matters are proper for first consideration and adjustment by the Commission. National Council, F. C. A. v. Chicago, B. & Q. R. Co. 34 Inters. Com. Rep. 60; New York State Shippers Asso. v. New York C. & H. R. R. Co. 30 Inters. Com. Rep. 437; Southern Missouri Millers Club v. St. Louis & S. F. R. Co. 26 Inters. Com. Rep. 245, 251; National Wholesale Lumber Dealers Asso. v. Atlantic Coast Line R. Co. 14 Inters. Com. Rep. 154; Central Yellow Pine Asso. v. Illinois C. R. Co. 10 Inters. Com. Rep. 505, 532; Tift v. Southern R. Co. 10 Inters. Com. Rep. 548, 575; Loomis v. Lehigh R. Co. 240 U. S. 43.

All such matters as are here presented are peculiarly within the jurisdiction of the Commission and the courts will decline to act or adjudicate upon them until the Commission has had opportunity to hear and pass upon them. Shanks v. Delaware, L. & W. R. Co. 239 U. S. 556; Texas & P. R. Co. v. Abilene Cotton Co. 204 U. S. 426; Baltimore & O. R. Co. v. Pitcairn Coal Co. 215 U S. 481; Robinson v. Baltimore & O. R. Co. 222 U. S. 506; Mitchell Coal Co. v. Pennsylvania R. Co. 230 U. S. 247; Morrisdale Coal Co. v. Pennsylvania R. Co. 231 U. S. 304; Minnesota Rate Cases, 230 U. S. 352; Texas & P. R. Co. v. American Tie Co. 234 U. S. 138; Pennsylvania R. Co. v. Puritan Coal Co. 237 U. S. 121; Pennsylvania R. Co. v. Clark Coal Co. 238 U. S. 456.

This case presents problems which directly concern rate making and are entirely administrative in their nature. Atchison, T. & S. F. R. Co. v. United States, 232 U. S. 199; R. R. v. Puritan Coal Co. supra; Pennsylvania R. Co. v. Clark Coal Co. supra, pp. 469, 470; National Lumber Asso. v. R. R. 14 Inters. Com. Rep. 154; New York Shippers Asso. v. New York C. R. Co. 30 Inters. Com. Rep. 437.

CHRISTIANSON, J.   This action was brought to recover moneys expended by the plaintiff in coopering and lining certain freight cars which the defendant furnished to the plaintiff in which to ship grain over defendant's railroad.

In its complaint plaintiff alleges "that at the several times between September 15, 1915, and December 31, 1915, and at several times during the months of January, March, April, and May, 1916, as appears from the annexed schedule, the plaintiff was a shipper of

numerous carloads of grain consisting of wheat, rye, flax, and barley over the railway of said company *from Wolseth, North Dakota, to St. Paul, Minnesota;"* that for each shipment or carload the freight car furnished by the defendant was not properly lined or coopered for receiving or containing the kind of grain sought to be shipped, and that defendant failed and neglected when requested to repair the same and put it in readiness for shipment within four hours after due notice of the defect had been given to the defendant's agent; that the plaintiff was obliged to line and cooper the cars, and pay out and expend on the several cars the sum shown in the schedule annexed to the complaint amounting in the aggregate to the sum of $151.41.

The defendant in its answer denies the allegations of the complaint and affirmatively alleges that the claims referred to in the complaint arose incident to interstate commerce shipments and in the course of interstate commerce; that the defendant was an interstate carrier, and that at the time of the shipment referred to in the complaint it had filed with the Interstate Commerce Commission the tariffs under which such shipments were made, and that said tariffs did not provide for payment or allowances for repairs of cars or cooperage of the character described in the complaint or otherwise; that said rates had been duly approved by the Interstate Commerce Commission and published and promulgated as required by law, and were then in full force and effect; that the state statute relating to cooperage has no application to interstate shipments and that the court has no jurisdiction over the subject-matter, but that the same is one for the Interstate Commerce Commission.

At the close of the testimony the defendant's counsel made a motion for a directed verdict on substantially the same grounds, set out in the affirmative defense. The motion was granted. Judgment was entered dismissing the action and plaintiff appeals.

Plaintiff predicates its right to recover upon § 4707, Comp. Laws 1913, which provides: "Every railroad corporation or common carrier doing business in this state shall when requested by any shipper of wheat, flax, or other grain, flour or flour mill products, furnish to such shipper a box car or box cars properly lined or coopered for receiving and containing the kind of grain, flour or flour mill products sought to be shipped and if such railroad, railroad corporation

or common carrier shall furnish any car not so lined or coopered to such shipper and shall fail to prepare and put in readiness such car within four hours after notice by such shipper to its agent at point of shipment that such car is not in proper condition such shipper may repair such car at his own expense and recover such sum so expended in a civil action against such railroad corporation or common carrier."

Plaintiff also contends that this section is merely declaratory of the common law, and merely aids a shipper in enforcing a common-law obligation against a carrier.

The Federal Constitution expressly grants power to Congress to regulate commerce among the several states and to make all laws necessary and proper for carrying that power into execution.

"The authority of Congress extends to every part of interstate commerce and to every instrumentality or agency by which it is carried on; and the full control by Congress over the subjects committed to its regulation is not to be denied or thwarted by the commingling of interstate and intrastate operations." Minnesota Rate Cases (Simpson v. Shepard) 230 U. S. 352, 57 L. ed. 1511, 48 L.R.A.(N.S.) 1151, 33 Sup. Ct. Rep. 729, Ann. Cas. 1916A, 18.

The object of vesting such power in Congress was to insure equality and freedom in commercial intercourse, and uniformity of regulation, against conflicting and discriminatory state legislation. 7 Enc. U. S. Sup. Ct. Rep. 303. There can be no divided authority over interstate commerce. The regulations of Congress on that subject are supreme. And when Congress sees proper to act with respect to any particular branch of interstate commerce, state regulations in conflict therewith or acting on the same subject, are thereby superseded. Chicago, R. I. & P. R. Co. v. Hardwick Farmers Elevator Co. 226 U. S. 426, 57 L. ed. 284, 46 L.R.A.(N.S.) 203, 33 Sup. Ct. Rep. 174; 5 R. C. L. p. 704.

The Interstate Commerce Act provides that it shall be unlawful for any common carrier subject to the provisions of the act, to make or give any undue or unreasonable preference or advantage to any particular person, company, firm, corporation or *locality,* or any particular description of traffic in any respect whatsoever, or to subject any particular person, company, firm, corporation or *locality,* or any par-

ticular description of traffic to any undue or unreasonable prejudice or disadvantage in any respect whatsoever. Michie, Carr. § 4016.

The Interstate Commerce Commission has been vested with plenary administrative power to enforce the provisions of the act. Under the powers conferred the Interstate Commerce Commission may supervise the conduct of carriers, hear complaints concerning the violations of the act, investigate the same, and if the complaints are well founded it may direct not only the making of reparation to the injured person, but may order the carrier to desist from such violation in the future. Texas & P. R. Co. v. Abilene Cotton Oil Co. 204 U. S. 426, 51 L. ed. 553, 27 Sup. Ct. Rep. 350, 9 Ann. Cas. 1075; Robinson v. Baltimore & O. R. Co. 222 U. S. 506, 56 L. ed. 288, 32 Sup Ct. Rep. 114.

The Interstate Commerce Commission has exclusive jurisdiction "to determine whether a regulation or a practice affecting rates or matters sought to be regulated by the Interstate Commerce Act is unjust or unreasonable, unjustly discriminatory, preferential, or prejudicial." Michie, Carr. § 4156. And the courts have no power to originally hear complaints upon any of the matters sought to be regulated by the act and within the jurisdiction of the Interstate Commerce Commission. Texas & P. R. Co. v. Abilene Cotton Oil. Co. supra. "The effect of the act is not merely to suspend the right of a shipper to maintain an action at law to recover damages resulting from an unreasonable rate or discriminating regulation or practice established by an interstate carrier while such rate or regulation remains in force, but to supersede such right entirely, and substitute therefor the remedy provided by the act itself." Michie, Carr. § 4156.

"The dominating purpose of the statute," said Mr. Justice Hughes, speaking for the court in the Minnesota Rate Cases (Simpson v. Shepard) 230 U. S. 352, 419, 57 L. ed. 1511, 1550, 48 L.R.A.(N.S.) 1151, 33 Sup. Ct. Rep. 729, Ann. Cas. 1916A, 18, "was to secure conformity to the prescribed standards through the examination and application of the complex facts of transportation by the body created for that purpose, and, as this court has repeatedly held, it would be destructive of the system of regulation defined by the statute if the court, without the preliminary action of the Commission, were to

undertake to pass upon the administrative questions which the statute has primarily confided to it."

The effect of the act to regulate commerce upon the various problems arising with respect to the interstate traffic has been considered and expounded by the Supreme Court of the United States in many cases. In Chicago, R. I. & P. R. Co. v. Hardwick Farmers Elevator Co. 226 U. S. 426, 57 L. ed. 284, 46 L.R.A.(N.S.) 203, 33 Sup. Ct. Rep. 174, that court held that the Minnesota Reciprocal Demurrage Law was invalid and ineffective as applied to cars used in interstate traffic. In discussing the Interstate Commerce Act and its effect on the Minnesota statute, the court said:—"As legislation concerning the delivery of cars for the carriage of interstate traffic was clearly a matter of interstate commerce regulation, even if such subject was embraced within that class of powers concerning which the state had a right to exert its authority in the absence of legislation by Congress, it must follow in consequence of the action of Congress to which we have referred that the power of the state over the subject-matter ceased to exist from the moment that Congress exerted its paramount and all embracing authority over the subject. We say this because the elementary and long-settled doctrine is that there can be no divided authority over interstate commerce, and that the regulations of Congress on that subject are supreme."

In Illinois C. R. Co. v. De Fuentes, 236 U. S. 157, 59 L. ed. 517, P.U.R.1915A, 840, 35 Sup. Ct. Rep. 275, the court held that "Congress has so far undertaken to regulate the subject as to invalidate, as an unlawful regulation of interstate commerce, an order of a state railroad commission under which a carrier may be required, upon demand of a carrier or shipper, and on terms fixed by the commission, to switch empty cars from any connection with a competing interstate railway to a designated side track within its own terminals in a city, for the purpose of being loaded there with goods intended for interstate commerce, and when so loaded, to move the same back to the competitor's line for continued transportation to another state, and also to accept from competing interstate lines at points within the city loaded cars brought from other states, and place them on its own side track although such side track was the real destination contemplated at the time of the original shipment."

In Texas & P. R. Co. v. American Tie & Lumber Co. 234 U. S. 138, 58 L. ed. 1255, 34 Sup. Ct. Rep. 885, the court ruled that a suit may not be maintained against a railway company to recover damages resulting from its refusal to accept an interstate shipment of oak railway cross ties in the absence of previous action by the Interstate Commerce Commission, even though the refusal to accept the shipment was based upon the want of any filed or published rate applicable to such shipment.

That questions of the nature presented in and which form the basis of plaintiff's cause of action in this case are among those regulated by the Interstate Commerce Act has repeatedly been recognized by the Interstate Commerce Commission and also by the Supreme Court of the United States. See National Wholesale Lumber Dealers Asso. v. Atlanta Coast Line R. Co. 14 Inters. Com. Rep. 154; New York State Shippers' Protective Asso. v. New York C. & H. R. R. Co. 30 Inters. Com. Rep. 437; National Counsel, F. C. A. v. Chicago, B. & Q. R. Co. 34 Inters. Com. Rep. 60; Loomis v. Lehigh Valley R. Co. 240 U. S. 43, 60 L. ed. 517, 36 Sup. Ct. Rep. 228.

In National Counsel, F. C. A. v. Chicago, B. & Q. R. Co. 34 Inters. Com. Rep. 60, the Interstate Commerce Commission considered the complaint of shippers of grain owning elevators at country stations in the states of Illinois, Iowa, Minnesota, Nebraska, Kansas, North and South Dakota, alleging that the railroad companies were not furnishing cars in suitable conditions for the transportation of grain in bulk, and asking that they (the shippers) be allowed either to furnish cars suitable in all respects for carrying this traffic, or make allowances to them for work done and materials furnished to prepare the cars for loading. The Interstate Commerce Commission gave careful consideration to the various aspects of the questions presented and clearly recognized that these questions were within the jurisdiction of and properly determinable by the Interstate Commerce Commission.

In the opinion in that case the Interstate Commerce Commission said:

"Originally cars designed for shipment of grain were equipped with stationary or swinging grain doors, which, however, were not found to be practicable. Because of inability to secure a satisfactory permanent grain door the practice of defendants for more than a

quarter of a century has been to furnish grain shippers at country stations with 'sectional doors,' or boards, which may be nailed to the car door posts. . . . There is no uniformity with respect to the amount or the character of the material furnished by different carriers. Some of them furnish sectional doors, boards, lath and burlap or paper specially designed for the purpose; others furnish sectional doors, lumber and paper; and others furnish nothing but sectional doors and lumber. . . . Practically all cars furnished to these country elevators must be cleaned by the shipper. A large percentage of them require more or less patching, or coopering, to render them fit to carry grain without leakage. It is impossible to determine from the record the exact percentage of cars furnished which the shippers must materially repair before loading. So far as the evidence shows, some patching and repairing work by the shipper, besides placing the grain doors and coopering around them, is required on about 50 per cent of the cars furnished. This work may consist of covering one or more holes or cracks in the floor, or it may, and often does, include repairs to door posts, ends, linings, roof, and sides of car. . . . During the year 1908 and continuing until July, 1911, defendants' rules provided that when cars furnished for grain, grain products, or other bulk freight required repairing to insure against leakage in transit, and the material necessary for the repairing was furnished by the shipper, payment for the actual cost of the same, including cost of necessary labor, but not exceeding 80 cents per car, would be made by the carrier furnishing the car. It developed that it was impossible for the carrier to keep any check of the material used or alleged to have been used, or of the labor so performed. *Known abuses of the rule existed, and discriminations inevitably resulted.*

"For a number of years an allowance of $2 per car for grain doors furnished was paid to terminal elevator companies. This was found to result in the carriers paying for grain doors that had been made out of material furnished by the carriers. Claims were presented for furnishing grain doors for outbound cars when the doors or the materials used therefor were taken from inbound cars. This allowance and the allowance of 80 cents per car to the country elevators were discontinued at the same time. . . . The repair work done upon cars

by shippers, such as closing a hole with boards or coopering the car with burlap or paper, is not permanent. The work must ordinarily be done at the station from which the shipment is made. In the very nature of things the shipper who loads the car can prepare it for loading to better advantage than can anyone else. It is therefore not unreasonable to expect the shipper to sweep a car or do a reasonable amount of cleaning, or to make some minor and inexpensive repairs to prepare the car for loading and prevent leakage of grain in transit. It is impracticable for the carriers to have competent workmen at all stations to do this work, and minor cleaning, patching and coopering can readily be done by men in the employ of the elevator companies, who know exactly what is to be done and how best to do it. If the car furnished requires much repairing, if its door posts are shattered or broken, or if it has many holes or cracks through which grain would sift in transit, the shipper should refuse to accept it. The obligation of the carrier is to promptly furnish a suitable car. The shipper is not bound to receive and load a car upon which he must expend labor and materials to make it suitable to transport grain. . . . . Experience has demonstrated that it is impossible to accurately check claims for material furnished and labor performed by shippers. We conclude that we may not with propriety fix by order a maximum amount that should be paid the shipper by a carrier for labor performed and for materials furnished by him in installing grain doors or doing other incidental repair work on cars furnished for shipments of grain in bulk. *If, however, a carrier makes any allowance to shippers at country stations for work done or materials furnished, the conditions and purposes as well as the maximum allowance must be stated in its tariff and must be applied without discrimination.* The amount and character of the material furnished shippers for grain doors and for incidental coopering and repairing should be uniform and adequate for the purpose; *just what will be furnished should be clearly stated in tariffs.* It is manifest that if a carrier furnishes nothing but loose boards at one point and at another point furnishes sectional doors, lath, paper, or burlap, unlawful discrimination results."

The case of Loomis v. Lehigh Valley R. Co. 240 U. S. 43, 60 L. ed. 517, 36 Sup. Ct. Rep. 228, originated in the courts of the state of

New York. In that case the shipper sought to recover on the theory that the carrier had failed to perform its common-law duty to furnish adequate cars; that the shippers had been compelled to obtain the necessary material and perform the labor required to make the cars adequate for transporting agricultural products in bulk, and that consequently the shippers were entitled to recover as damages their outlay for the material furnished and labor performed. The case involved both intrastate and interstate shipments. The New York court of appeals held that the shippers had a right to recover upon the common-law liability of the carriers, unless the local or Federal statute had established different rules. It concluded that the New York statutes created no bar to recovery and that the shippers were entitled to recover on account of the intrastate shipments. But it further concluded that Congress had assumed such control over interstate shipments as to deprive the state courts of power to consider claims arising out of them. 208 N. Y. 312, 101 N. E. 907. A writ of error was sued out and the cause brought before the United States Supreme Court for review. That court affirmed the decision of the New York court of appeals.

The opinion of the United States Supreme Court is summarized in the syllabus as follows: "The character of equipment which the carrier must provide and allowances which it must make for instrumentalities supplied, and services rendered, by the shipper—such as inside doors and bulkheads in cars and timber therefor—are problems which directly concern rate making and are peculiarly administrative on which there should be an appropriate inquiry by the Interstate Commerce Commission before being submitted to a court." 240 U. S. 43.

"Without preliminary action by the Interstate Commerce Commission a state court has no jurisdiction of an action by shippers to recover from an interstate carrier sums expended by them in constructing grain doors or bulkheads in cars furnished by the carrier for interstate carload shipments of farm products in bulk, the applicable duly filed interstate rate schedules making no reference to allowances for grain doors or bulkheads." See Loomis v. Lehigh Valley R. Co. supra.

The opinions of the Interstate Commerce Commission and of the

Supreme Court of the United States in the two cases last cited speak for themselves. The questions involved in the instant case are similar to those which were involved in the cases cited. And in our opinion the doctrine announced by the United States Supreme Court in the case last cited is controlling in the instant case.

Plaintiff contends that the cars on which the repairs were made were not instrumentalities of interstate commerce at the time the duty to repair them arose. It contends that this duty arose when they were ordered; that the cars first became instrumentalities of interstate commerce after they had been loaded with grain, billed for shipment to a point in some other state, and actually started on the way to their destination, and that until they were so loaded, billed, and started, they were subject entirely to state control and state regulations. Plaintiff's contention is distinctly contrary to the principle announced, and fully answered by what the United States Supreme Court said, in the several cases cited above. See Texas & P. R. Co. v. Abilene Cotton Oil Co. 204 U. S. 426, 51 L. ed. 553, 27 Sup. Ct. Rep. 350, 9 Ann. Cas. 1075; Robinson v. Baltimore & O. R. Co. 222 U. S. 506, 56 L. ed. 288, 32 Sup. Ct. Rep. 114, and Loomis v. Lehigh Valley R. Co. supra.

It appears on the face of the complaint, and the evidence shows, that the transactions upon which plaintiff seeks to recover arose during interstate traffic, and are regulated by the Interstate Commerce Act. And under the decisions of the United States Supreme Court the state courts may not entertain plaintiff's action without preliminary action by the Interstate Commerce Commission. The judgment appealed from must be affirmed. It is so ordered.

GRACE, J. I concur in the result.

ROBINSON, J. (dissenting). This is an appeal from the judgment of the county court of Cass county that the action be dismissed for the reason that the court has no jurisdiction of the subject of the action. The objection should have been made by a demurrer and then if sustained it would have saved the cost of a needless and useless trial. Counsel for defendant makes objection to the settlement of the statement of the case, but as there has been no judgment upon the merits,

the statement of the case and the evidence become immaterial. If the court had jurisdiction of the subject of the action, the case must be remanded for a trial on the merits.

The action is based on an act for the cooperage of cars by which it is made the duty of the railway company to furnish shippers of grain box cars properly lined and coopered for the grain and in case of failure to do so then, after notice of four hours, the shipper may repair the car and recover the expense in a civil action against the railway company. Comp. Laws 1913, § 4707. This act was passed by reason of the fact that railway companies have been quite in the habit of furnishing cars with small crevices, cracks, and leakages by which grain is lost to the owner, who finds it difficult to prove the loss and to recover compensation by suit for damages. To prevent leakage it may be necessary to line the inside of the car in whole or in part with tar paper and often it is of special importance that the work be done quickly. There is no time to consult Interstate Commerce Commissions.

The complaint shows that in 1915 and 1916 the plaintiff was a shipper of numerous carloads of grain over the road of the defendant from Walseth, North Dakota, to St. Paul, Minnesota; that defendant furnished the plaintiff box cars which were not properly lined and coopered so as to hold the grain; that after due notice was given defendant, it failed and refused to put the cars in a fit condition to receive the grain; that by reason thereof plaintiff was obliged to cooper the cars and to pay for the same several sums, one hundred in all, amounting to $151.41. Then there is given the date, the number of each car, the labor and material expended in coopering the same.

Clearly the complaint does state a cause of action, in accordance with the letter and spirit of the statute, but counsel for defendant insist that as the grain shipment was interstate commerce, that the necessary cooperage was also interstate commerce and that plaintiff has no remedy except by some suit in the United States Courts or the Interstate Commerce Commission. Still defendant does not point the way to such a remedy or show that the Commission or the United States Courts are in the habit of giving any redress in such petty matters and defendant did not move to have the matters transferred to the United States Courts or to the Commission. There is no showing

that the necessary cooperage of grain cars to such a trivial amount is any part of interstate commerce. Indeed, it is a matter of local urgency which must be met and acted upon in every case before the loading of a car, and before there is commerce of any kind.

The complaint shows it became necessary to cooper about 100 cars and on each car the amount was an average of $1.50. It was a matter of urgency and the work probably saved the company many times the sum of the expense.

Clearly the cooperage act is constitutional. The complaint does state a good cause of action. Under the statute the county court had jurisdiction of the subject of the action. Hence, the judgment should be reversed and the case remanded for a new trial on the merits.

## On Petition for Rehearing.

PER CURIAM. Plaintiff has filed a petition for a rehearing. The petition presents no question which was not considered in and decided by the former decision.

The petition cites and quotes from decisions holding that the whole subject of liability of carriers to shippers in interstate commerce has not been withdrawn from the jurisdiction of the state courts. We certainly said nothing to the contrary in the former opinion.

The principle announced in the former opinion is that, "without preliminary action by the Interstate Commerce Commission, a state court has no jurisdiction of an action by a shipper to recover from an interstate carrier sums expended by him (the shipper) in lining and coopering cars furnished by the carrier for interstate carload shipments of grain in bulk, the applicable duly filed interstate rate schedules making no reference to allowances therefor."

That the Interstate Commerce Commission has exclusive jurisdiction of, and that the courts may not as an original question hear, complaints and pass upon any of the administrative questions which the Interstate Commerce Commission has been invested with power to determine, has been conclusively settled by the decisions of the United States Supreme Court. The principle has been reaffirmed subsequent to the promulgation of the former decision in this case. See Northern P. R. Co. v. Solum, 247 U. S. 477, 62 L. ed. 1221, 38 Sup. Ct. Rep. 550.

The petition for rehearing invites our special consideration to the decision of the supreme court of Kansas in Rock Mill. & Elevator Co. v. Atchison, T. & S. F. R. Co. 98 Kan. 478, 154 Pac. 254, which involved the right of a shipper in interstate commerce to maintain an action in the state courts to recover amounts due for repairing cars so as to put them in condition to hold the shipments. And it is asserted that the conclusion reached by the Kansas court "is exactly the opposite of that reached by this court in this case." An examination of the decision cited discloses that in the Kansas case the tariff of the Railroad Company on file with the Interstate Commerce Commission made provision for the reimbursement of shippers for expenses incurred in repairing cars, and fixed a maximum amount of allowance for each car. Hence, in that case, the condition was present, which is absent, and in our opinion fatal to jurisdiction, in the case at bar. For in the case at bar there was no provision made in the tariff of the Railroad Company for payment of the charges which plaintiff seeks to recover. Obviously, the Kansas decision is not contrary to the views expressed in our former opinion. On the contrary the practices involved in that case assumed, and the decision therein impliedly concedes, that allowances of the charges of a shipper for repairing cars so as to render them fit for proper transportation of shipments are an administrative question, directly concerns rate making, and properly a part of the rate schedules filed by the carrier with the Interstate Commerce Commission.

It is suggested in the petition for rehearing that the rule announced may lead to discriminatory practices by reason of a railroad company's furnishing cars in worse condition to one shipper than to another. This, as to interstate shipments, is a matter for the Interstate Commerce Commission. The contention advanced virtually concedes the administrative character of the practices involved and upon which plaintiff's cause of action is predicated.

We see no reason for receding from the views expressed in our former opinion.

The former decision will stand. A rehearing is denied.

GRACE, J. I concur in denying the petition for rehearing.