# LOOMIS *v.* LEHIGH VALLEY RAILROAD COMPANY.

### ERROR TO THE SUPREME COURT OF THE STATE OF NEW YORK.

No. 106. Argued December 6, 1915.—Decided January 24, 1916.

The purpose of the Act to Regulate Commerce was to secure and preserve uniformity, and the courts may not, as an original question, exert authority over subjects which primarily come within the jurisdiction of the Commission.

The character of equipment which the carrier must provide and allowances which it must make for instrumentalities supplied, and services rendered, by the shipper—such as inside doors and bulkheads in cars and timber therefor—are problems which directly concern rate making and are peculiarly administrative on which there should be an appropriate inquiry by the Interstate Commerce Commission before being submitted to a court.

The opinions of the Interstate Commerce Commission on questions in regard to allowances to shippers for doors and bulkheads indicate that these problems are complicated and administrative.

THE facts, which involve the construction and application of the Act to Regulate Commerce as amended by the Hepburn Act, are stated in the opinion.

*Mr. Edward P. White,* with whom *Mr. John Colmey* was on the brief, for plaintiff in error:

The judgment presents a Federal question, because it is founded upon an erroneous construction of certain Federal statutes, and upon nothing else.

It was the common-law duty of the defendant to furnish the lumber in suit.

The common-law duty asserted by the plaintiffs is reaffirmed by § 1 of the Interstate Commerce Act, the

liability of the defendant is necessarily implied by § 15, and the common-law remedy is expressly saved by § 22.

The common-law duty asserted in this action was enforceable at the place of shipment by the courts of New York, whatever the destination of the freight.

The alleged defense is without foundation.

The judgment under review, so far as it reverses part of the original judgment, should itself be reversed, in other respects it should be affirmed, and the original judgment should in all things be affirmed.

In support of the contentions, see *Atlantic Coast Line* v. *Riverside Mills*, 219 U. S. 186; *Atlantic Coast Line* v. *Mazursky*, 216 U. S. 122; *Cook* v. *Avery*, 147 U. S. 375, 384; *Chicago, M. & St. P. Ry.* v. *Solan*, 169 U. S. 133; *Cincinnati, N. O. & T. P. Ry.* v. *Fairbanks*, 90 Fed. Rep. 467, 471; *Commercial Bank* v. *Sloman*, 121 Am. Dec. 874; *Eastern Railway* v. *Littlefield*, 237 U. S. 140; *Farron* v. *Sherwood*, 17 N. Y. 227; *Galveston &c. R. R.* v. *Wallace*, 223 U. S. 481; *Goodale* v. *Lawrence*, 88 N. Y. 513; *Hanks* v. *Mo. Pac. Ry.*, 92 Nebraska, 594; *Hilton Lumber Co.* v. *Atlantic Coast Line*, 6 L. R. A. (N. S.) 225; Hutchinson on Carriers, § 497; *Ill. Cent. R. R.* v. *McKendree*, 203 U. S. 514, 525; *Ill. Cent. R. R.* v. *Mulberry Coal Co.*, 238 U. S. 275; *Int. Comm. Com.* v. *Diffenbaugh*, 222 U. S. 42; *Louis. & Nash. R. R.* v. *Brewing Co.*, 223 U. S. 70; *Loomis* v. *Lehigh Valley R. R.*, 147 App. Div. 195; *S. C.*, 132 N. Y. Supp. 138; *No. Pac. Ry.* v. *Larabee Mills*, 211 U. S. 612; *Mo. Pac. Ry.* v. *Castle*, 224 U. S. 541; *Murdock* v. *Memphis*, 20 Wall. 590; *N. Y., N. H. & Hart. R. R.* v. *New York*, 165 U. S. 628; *Neass* v. *Mercer*, 15 Barb. 318; *Norton* v. *Coons*, 6 N. Y. 33, 40; *Nutt* v. *Knut*, 200 U. S. 12, 19; *Pearce* v. *Wabash R. R.*, 192 U. S. 179; *Penna. R. R.* v. *Puritan Coal Co.*, 237 U. S. 121; *Penna. R. R.* v. *Knight*, 171 N. Y. 354; *S. C.*, 192 U. S. 21; *Railroad Co.* v. *Davis*, 159 Illinois, 53, 58; *Roberts* v. *Ely*, 113 N. Y.

128, 131; *St. L., I. M. & So. Ry.* v. *Taylor,* 210 U. S. 281.

*Mr. Lyman M. Bass,* with whom *Mr. Daniel J. Kenefick* and *Mr. Thomas R. Wheeler* were on the brief, for defendant in error:

No question is presented for review to this court because the judgment of the Court of Appeals of New York State does not deny any right, privilege or immunity specially set up or claimed by the plaintiffs in error under any statute of the United States.

The courts of the State of New York had no jurisdiction over the interstate shipments involved since Congress had legislated upon the field covering such interstate transportation and had assumed exclusive jurisdiction thereof.

The courts of the State of New York have not jurisdiction to nor should this court direct that the defendant in error make a payment to the plaintiffs in error in violation of the specific provisions of the Interstate Commerce Act.

The Interstate Commerce Commission under the Interstate Commerce Act has the exclusive jurisdiction to determine whether or not the practice of the defendant in error was discriminatory and unjust in failing to provide in its tariffs for allowances to shippers for lumber furnished for grain doors or bulkheads and until the Interstate Commerce Commission had acted, no court, state or Federal, had any jurisdiction to require the railroad to pay shippers for such lumber so furnished.

Defendant after the passage of the Hepburn Act owed no common-law duty to furnish grain doors and bulkheads for interstate shipments without extra charge, and consequently there is no obligation on its part to reimburse the plaintiffs for lumber furnished by them for that purpose without its request unless provisions therefor were made in its tariffs.

In support of these contentions, see *Armour Packing Co.* v. *United States,* 209 U. S. 57, 72; *Atchison Ry.* v. *United States,* 232 U. S. 199; *Atlantic Coast Line* v. *Macon Grocery Co.,* 166 Fed. Rep. 206, aff'd 215 U. S. 501; *Balt. & Ohio R. R.* v. *Pitcairn Coal Co.,* 215 U. S. 481; *Boston & Maine R., R.* v. *Hooker,* 233 U. S. 97; *Chicago & Alton R. R.* v. *Kirby,* 225 U. S. 155; *Chicago & Rock Island Ry.* v. *Hardwick,* 226 U. S. 426; *Cincinnati &c. R. R.* v. *Slade,* 216 U. S. 78, 83; *Fowler* v. *Samson,* 164 U. S. 252; *Harding* v. *Illinois,* 196 U. S. 78, 84; *K. C. S. Ry.* v. *Albers Commission Co.,* 223 U. S. 573; *Loeb* v. *Trustees,* 179 U. S. 472, 481; *Louis. & Nash. R. R.* v. *Mottley,* 219 U. S. 467; *Mutual Life Ins. Co.* v. *McGrew,* 188 U. S. 291; *Mitchell Coal Co.* v. *Penna. R. R.,* 230 U. S. 247, 258–9; *McNeil* v. *Southern Ry.,* 202 U. S. 543; *Morrisdale Coal Co.* v. *Penna. R. R.,* 230 U. S. 304; *National Lumber Assn.* v. *Atlantic Coast Line,* 14 I. C. C. 154; *N. Y. & New Haven R. R.* v. *Int. Comm. Com.,* 200 U. S. 361, 391; *Oxley Stave Co.* v. *Butler Co.,* 166 U. S. 648; *Penna. R. R.* v. *Int. Mining Co.,* 230 U. S. 184; *Penna. R. R.* v. *Puritan Coal Co.,* 237 U. S. 121; *Penna. R. R.* v. *Clark,* 238 U. S. 456; *Pierce Co.* v. *Wells, Fargo Co.,* 236 U. S. 278; *Robinson* v. *Balt. & Ohio R. R.,* 222 U. S. 506; *Sayward* v. *Denny,* 158 U. S. 180; *Southern Ry.* v. *Reid,* 222 U. S. 424; *Swearingen* v. *St. Louis,* 185 U. S. 38, 45; *Tex. & Pac. Ry.* v. *Abilene Oil Co.,* 204 U. S. 426; *Thomas* v. *Illinois,* 209 U. S. 258; *Victor Fuel Co.* v. *Atchison &c. Ry.,* 14 I. C. C. 119; *Zadig* v. *Baldwin,* 166 U. S. 485, 488.

MR. JUSTICE McREYNOLDS delivered the opinion of the court.

Plaintiffs in error have long been shippers of grain and produce over the line of defendant carrier from Victor and other stations in Western New York. From time to time during a period beginning in August, 1906, and ending

May 6, 1908, they requested it to furnish at such places for their use one or more cars—about two hundred altogether—suitable for transporting in bulk, wheat, oats, rye, apples, cabbages and potatoes. In response, it sent ordinary box and refrigerator cars inadequate for the required service until fitted with inside doors or transverse bulkheads. Prior to 1906, in like circumstances, the custom was for the railroad to supply lumber without charge and shippers constructed these temporary fittings. This practice was discontinued at the stations mentioned, and, during the period specified, it refused either to supply such material or cars completely prepared for carrying in bulk the enumerated articles. Plaintiffs were therefore compelled to construct inside doors or bulkheads in the car, which they loaded and delivered to defendant for transportation to points both within and beyond the State. The total cost of material used was $322.07—it varied from forty cents to three dollars and fifty cents per car.

Payment of the amount so expended was demanded by plaintiffs and refused. Without preliminary resort to the Interstate Commerce Commission, they then brought this action in a state court upon the theory that the carrier having failed to perform its common-law duty to furnish adequate cars, they were entitled to recover as damages their consequent outlay. Defendant denied liability and further challenged the court's jurisdiction over claims incident to interstate shipments because: It was and remains an interstate carrier subject to the Act to Regulate Commerce as amended and supplemented as well as the act of Congress passed February 19, 1903, known as the Elkins Act, etc.; it had filed with the Interstate Commerce Commission the tariffs under which such shipments were made; these tariffs fixed rates for transportation only and did not provide for payments or allowances for grain doors, bulkheads, or lumber for

constructing the same; the rates were reasonable and just and had not been held otherwise by the Interstate Commerce Commission.

The Court of Appeals held that the common law imposed upon the railroads the duty of furnishing cars equipped with inside doors, or bulkheads for transporting grain or provisions in bulk and unless local or Federal statutes had established different rules plaintiffs were entitled to recover. Having considered the statutes, it concluded the local act created no bar to recovery on account of the intrastate shipments, but that Congress had assumed such control over interstate shipments as to deprive the state courts of power to consider claims arising out of them. 208 N. Y. 312. The judgment of the Appellate Division in favor of plaintiffs for total cost of material supplied by them was modified accordingly and the record and proceedings remitted to the Supreme Court, Ontario County. This writ of error was then sued out to obtain a review of the judgment of the Court of Appeals, being addressed to the Supreme Court because the record was in its possession. *Shanks* v. *Del., Lack. & West. R. R.*, 239 U. S. 556.

No serious dispute exists concerning the facts. The applicable duly-filed interstate rate schedules made no reference to allowances for grain doors or bulkheads, and the circumstances under which these were installed, together with their cost, are not controverted. Whether there was jurisdiction in the state court to pass upon the carrier's liability incident to the interstate traffic, is the sole point demanding consideration.

The effect of the Act to Regulate Commerce, as supplemented and amended, upon the jurisdiction of courts, has been expounded in many cases heretofore decided. *Tex. & Pac. Ry.* v. *Abilene Cotton Co.,* 204 U. S. 426; *Balt. & Ohio R. R.* v. *Pitcairn Coal Co.,* 215 U. S. 481; *Robinson* v, *Balt. & Ohio R. R.,* 222 U. S. 506; *Mitchell*

*Coal Co.* v. *Penna. R. R.,* 230 U. S. 247; *Morrisdale Coal Co.* v. *Penna. R. R.,* 230 U. S. 304; *Minnesota Rate Cases,* 230 U. S. 352; *Tex. & Pac. Ry.* v. *American Tie Co.,* 234 U. S. 138; *Penna.R. R.* v. *Puritan Coal Co.,* 237 U. S. 121; *Penna. R. R.* v. *Clark Coal Co.,* 238 U. S. 456.

Speaking through Mr. Justice Lamar in *Mitchell Coal Co.* v. *Penna. R. R., supra,* we said (p. 255): "The courts have not been given jurisdiction to fix rates or practices in direct proceedings, nor can they do so collaterally during the progress of a lawsuit when the action is based on the claim that unreasonable allowances have been paid. If the decision of such questions was committed to different courts with different juries the results would not only vary in degree, but might often be opposite in character— to the destruction of the uniformity in rate and practice which was the cardinal object of the statute."

In the *Minnesota Rate Cases, supra,* we further said (p. 419): "The dominating purpose of the statute was to secure conformity to the prescribed standards through the examination and appreciation of the complex facts of transportation by the body created for that purpose; and, as this court has repeatedly held, it would be destructive of the system of regulation defined by the statute if the court without the preliminary action of the Commission were to undertake to pass upon the administrative questions which the statute has primarily confided to it."

And in *Tex. & Pac. Ry. Co.* v. *American Tie Co., supra,* the rule was thus stated (p. 146): "It is equally clear that the controversy as to whether the lumber tariff included crossties was one primarily to be determined by the Commission in the exercise of its power concerning tariffs and the authority to regulate conferred upon it by the statuté. Indeed, we think it is indisputable that that subject is directly controlled by the authorities which establish that for the preservation of the uniformity which

it was the purpose of the Act to Regulate Commerce to. secure, the courts may not as an original question exert authority over subjects which primarily come within the jurisdiction of the Commission."

An adequate consideration of the present controversy would require acquaintance with many intricate facts of transportation and a consequent appreciation of the practical effect of any attempt to define services covered by a carrier's published tariffs, or character of equipment which it must provide, or allowances which it may make to shippers for instrumentalities supplied and services rendered. In the last analysis the instant cause presents a problem which directly concerns rate-making and is peculiarly administrative. *Atchison, Topeka & Santa Fe Ry.* v. *United States*, 232 U. S. 199, 220. And the preservation of uniformity and prevention of discrimination render essential some appropriate ruling by the Interstate Commerce Commission before it may be submitted to a court. See *Penna. R. R.* v. *Puritan Coal Co., supra*, pp. 128, 129; *Penna. R. R.* v. *Clark Coal Co., supra*, pp. 469, 470.

If in respect of interstate business the courts of New York may determine, as original matters, rate-making problems, those in other States have like jurisdiction. The uncertainty and confusion which would necessarily result, is manifest. Ample authority has been given the Commission, in circumstances like those here shown, to administer proper relief, and in connection therewith to approve some general rule of action. In so doing it would effectuate the great purpose for which the statute was enacted.

On June 1, 1908, before this proceeding was begun, the Interstate Commerce Commission ruled: "A carrier may not lawfully reimburse shippers for the expense incurred in attaching grain doors to box cars unless expressly so provided in its tariff." (Conference Ruling No. 78.) In *National Lumber Ass'n* v. *Railroad*, 14 I. C. C. 154,

June 23, 1908, after much consideration, the Commission refused to order carriers either to furnish flat cars equipped in all respects for transporting lumber or grant allowances for cost incurred by shippers in connection therewith. In *N. Y. Shippers' Ass'n* v. *N. Y. Central R. R.*, 30 I. C. C. 437 (1914), the regulations and practices of railroads in Western New York with respect to car fittings used in bulk transportation of grain and produce, were challenged. The shippers claimed, "it is the carrier's duty to supply cars at all seasons of the year fully equipped for the safe transportation of grain, potatoes, and other produce in bulk without further fitting; or, that if a car be tendered the shipper which cannot safely be used for such commodities, in view of their nature or of the condition of the weather, it is the carrier's duty to furnish, or to pay for, all materials and labor necessary to render the car reasonably safe." This was denied. The opinions in these causes strikingly indicate the complicated administrative problem involved.

We find no error in the judgment below and it is

*Affirmed.*