**CHESAPEAKE AND OHIO RAILWAY COMPANY, Louisville & Nashville Railroad Company, The New York Central Railroad Company, Norfolk and Western Railway, The Pennsylvania Railroad Company, and The Virginian Railway Company, Plaintiffs-Appellants,**

v.

**INTERNATIONAL HARVESTER COMPANY, Defendant-Appellee.**

**No. 12736.**

United States Court of Appeals Seventh Circuit.

Dec. 3, 1959.

**140**

Edward R. Gustafson, Chicago, Ill., Robert H. Pratt, Richmond, Va., Daniel J. Sweeney, Chicago, Ill., for plaintiffs-appellants.

Irvin R. McClellan, Chicago, Ill., for appellee.

Before DUFFY and CASTLE, Circuit Judges, and MERCER, District Judge.

CASTLE, Circuit Judge.

The plaintiffs-appellants [1] brought suit in the District Court seeking to recover from International Harvester Company, defendant-appellee, the difference between charges paid by defendant for transportation services and charges claimed by plaintiffs under their published tariffs. The complaint alleged that the action arose under the Interstate Commerce Act, 49 U.S.C.A. §§ 3(2) and 6(7) and that jurisdiction was predicated on 28 U.S.C.A. § 1337. The defendant filed a motion for summary judgment. The cause was heard on the complaint, motion for summary judgment and affidavits filed in support of and in opposition to the motion. The District Court found that there was no genuine issue as to any material fact and that the defendant was entitled to judgment as a matter of law. The court granted defendant's motion for summary judgment and entered judgment for the defendant. The plaintiffs appealed contending that the court erred in granting the motion for summary judgment.

The contested issues are (1) whether a genuine issue of material fact was presented, and (2) whether the issue involved concerned a matter within the primary jurisdiction of the Interstate Commerce Commission.

Pursuant to a 1956 application of railroads the Interstate Commerce Commission granted certain rate increases. Among increases granted were those to be accorded "lake cargo coal". This commodity moves by rail from inland mines to ports on the Great Lakes where it is transshipped by vessel to other ports.

---

1. The Chesapeake and Ohio Railway Company, Louisville & Nashville Railroad Company, The New York Central Railroad Company, Norfolk and Western Railway, The Pennsylvania Railroad Company, and The Virginian Railway Company, herein referred to as plaintiffs.

In some instances upon arrival at the second port the coal moves inland by rail. The findings of the Commission with respect to the increases to be permitted on "lake cargo coal" read as follows:

"The flat 10 cents per net ton increase shall also apply on so-called lake cargo coal with a subsequent movement beyond the first port to or via ports other than those located on Lake Superior and the west bank of Lake Michigan.

"Otherwise on coal and coke moving by rail-water, including coal to Canada, the increase in the rail factor subject to our jurisdiction shall not exceed 5 cents per net ton to the port when transshipped as cargo beyond such port; and when moving by rail-water-rail routes the increase in the rail factors subject to our jurisdiction shall not exceed 5 cents per net ton from the mine origin to the first port and 5 cents per net ton from the second port to destination."

The railroads thereafter published tariffs as follows:

"Note 4.—Except as provided in Note 5 of this item on Coal and Coke, as described in this item, moving on lake cargo rates to ports on the Great Lakes and St. Lawrence River for transshipment by water as cargo beyond the port.  10 cents per net ton

"Note 5.—On Coal and Coke, as described in this item, moving on lake cargo rates to ports in the Great Lakes and St. Lawrence River for transshipment by water as cargo to ports on Lake Superior and the West Bank of Lake Michigan."  5 cents per net ton

———◆———

Defendant is a receiver of lake cargo coal in the Chicago area. During the period April 15, 1957 to August 26, 1957, at which time the above tariffs were in force, the defendant made shipments of coal which moved over the lines of the plaintiffs, and their connections, at lake cargo rates, consigned to it at ports on the Great Lakes for transshipments by water as cargo beyond said ports. The shipments were transshipped by water and delivered thereby to the defendant at its plant located at South Chicago, Illinois, on the Calumet River. On these shipments the plaintiffs have demanded payment at a rate including the full 10 cents per ton increase. Defendant paid at a rate including a 5 cents per ton increase and refused to pay the additional amount claimed by plaintiffs.

Plaintiffs' action is based upon the premise that Chicago is not a "port * * * on the west bank of Lake Michigan" within the meaning of the tariff and that therefore the legally applicable charges with respect to the shipments to defendant require inclusion of the full 10 cents per ton increase. It is conceded, however, that from a geographical standpoint Chicago is a port on the west bank of Lake Michigan.

Although the complaint did not contain comparable allegations, plaintiffs assert in their affidavit in opposition to summary judgment that because (a) the Commission "invented" the descriptive phrase "ports * * * on the west bank of Lake Michigan" and (b) the permitted increases on lake cargo rates are higher if the port to which transshipment is made is other than a port on Lake Superior or the west bank of Lake Michigan, the descriptive phrase employed involves a highly specialized and technical meaning, the scope and application of which must be considered in the light of

the reasons why the commission permitted higher increases to some ports than to others. The complaint contained no allegations which would afford a basis for attributing any specialized, technical or peculiar meaning to the descriptive phrase here involved. The reasons set forth in plaintiffs' affidavit as a basis for so characterizing the phrase are in our opinion neither logical nor convincing.

■ Plaintiffs in the argument they advance to sustain a characterization of the descriptive phrase as specialized and technical, with its own peculiar meaning, speculate as to purposes the commission may have intended to accomplish and which coincide with attributing the peculiar meaning which plaintiffs would accord the terminology employed. It was the District Court's duty to resolve all doubts as to the existence of a genuine issue as to a material fact against the party moving for summary judgment. Sarnoff v. Ciaglia, 3 Cir., 165 F.2d 167, 168. But the determination of the existence of such an issue must rest upon something more tangible than mere speculation. Speculations in which plaintiffs indulge can afford no proper basis for this court to conclude that either a genuine issue of material fact was presented or that the common terminology employed was used in some peculiar sense or meaning which required reference to the Interstate Commerce Commission for exercise of its primary interpretive jurisdiction. We hold the instant case falls within the teaching of Great Northern Railway v. Merchants Elevator Co., 259 U.S. 285, 290, 294, 42 S.Ct. 477, 478, 66 L.Ed. 943, in which the court stated:

"The question argued before us is not whether the state courts erred in construing or applying the tariff, but whether any court had jurisdiction of the controversy, in view of the fact that the Interstate Commerce Commission had not passed upon the disputed question of construction."

* * * * * *

"In the case at bar the situation is entirely different from that presented in the American Tie & Timber Co. Case [Texas & Pacific Ry. Co. v. American Tie & Timber Co., 234 U.S. 138, 34 S.Ct. 885, 58 L.Ed. 1255], or in the Loomis Case [Loomis v. Lehigh Valley R. R. Co., 240 U.S. 43, 36 S.Ct. 228, 60 L.Ed. 517]. Here no fact, evidential or ultimate, is in controversy, and there is no occasion for the exercise of administrative discretion. The task to be performed is to determine the meaning of words of the tariff which were used in their ordinary sense and to apply that meaning to the undisputed facts. That operation was solely one of construction; and preliminary resort to the Commission was, therefore, unnecessary."

■ The facts and issues in this case are distinguishable from those involved in cases such as United States v. Western Pacific R. Co., 352 U.S. 59, 77 S.Ct. 161, 1 L.Ed.2d 126, and Northwestern Auto Parts Co. v. Chicago, B. & Q. R. Co., 8 Cir., 240 F.2d 743. And in Western Pacific it was expressly pointed out that the distinctions laid down in Great Northern were adhered to. In the instant case there is no ambiguity in the terms employed in the descriptive phrase "ports * * * on the west bank of Lake Michigan". The inherent fallacy in plaintiffs' position is demonstrated by their resort to the argument that defendant has failed to demonstrate "that the phrase 'ports located on the west bank of Lake Michigan' has any commonly accepted meaning." Plaintiffs by their mere assertion that some peculiar meaning is involved would thus attempt to shift the burden on the defendant to prove otherwise. We hold that the language used and its meaning are clear.

The judgment of the District Court is affirmed.

Affirmed.