ORLEANS MATERIALS AND EQUIP-MENT CO. Inc.

v.

ISTHMIAN LINES, INC.

ORLEANS MATERIALS AND EQUIP-MENT CO. Inc.

v.

MATSON NAVIGATION COMPANY.

Civ. A. 11934, 11935.

United States District Court
E. D. Louisiana.

Jan. 8, 1963.

6.  See United States v. Dillon, 183 F.Supp. 541 (S.D.N.Y.1960).

Henry J. Read, New Orleans, La., for plaintiffs.

Edward S. Bagley, New Orleans, La., for defendants.

Daniel Leach, Washington, D. C., Kathleen Ruddell, New Orleans, La., for the United States.

FRANK B. ELLIS, District Judge.

On January 12, 1962, Orleans Materials and Equipment Co., Inc., a Louisiana Corporation, brought an action in the Civil District Court for the Parish of Orleans, State of Louisiana, seeking judgment against Matson Navigation Co., a foreign corporation doing business in Louisiana, in the amount of $18,871.-80, and against the Isthmian Lines, Inc., a foreign corporation doing business in Louisiana, in the amount of $1,547.58, due to alleged overcharges on a contract of marine shipping. On January 31, 1962, both defendants removed their cases to this court stating that this court had original jurisdiction of this case as one arising under Acts of Congress regulating commerce, the Intercoastal Shipping Acts. 46 U.S.C.A. § 844 et seq. and the Shipping Act, 46 U.S.C.A. § 801 et seq. Plaintiffs have not sought a remand to the state court. The District Judge consolidated the cases on motion of the parties. The cause is here now on defendants' motion to dismiss or stay proceedings and alternatively for summary judgment dismissing the complaint. The United States has intervened as defendant and likewise seeks a dismissal or stay of the proceedings. The alleged basis for dismissing or staying the proceedings is that primary jurisdiction of this suit is vested in the Federal Maritime Commission. In addition defendants state that they are entitled to judgment as a matter of law.

Since this case has given rise to a variety of problems, a detailed state-

ment of the alleged facts is in order. Between May 25, 1960, and January 21, 1961, plaintiff made some nine shipments of structural steel aboard defendants' ships from New Orleans to Honolulu. Defendants are members of the Atlantic and Gulf Hawaiian Conference, a group of steamship lines organized to engage in this trade under an agreement filed with, and approved by, the Federal Maritime Commission pursuant to the provisions of Section 15 of the Shipping Act, 46 U.S.C.A. § 814. These carriers are subject to the Intercoastal Shipping Act, 46 U.S.C.A. § 843, the application of this Act being provided by 46 U.S.C.A. § 845b. In addition they are subject to the Shipping Act as provided by 46 U.S.C.A. § 847. The tariff in issue, Freight Tariff 13, had been published by the carriers and submitted to, and approved, by the Federal Maritime Board.

Under the tariff the freight rate is $29.26 per ton of 2000 pounds or $29.96 per 40 cubic feet, whichever is the greater. When plaintiff's steel arrived at dockside the steel was weighed and measured to determine which basis would bring the higher rate. It is this measurement which causes the dispute. Instead of applying the rate to the cubic footage which the steel actually occupied in the hold of the ship, the defendants measured the steel at dockside assuming that each angled member of each consignment of steel occupied a squared area. However, in the hold of the ship the defendants actually "nested" the steel which caused it to occupy a smaller cubic space than it did at dockside. Plaintiff says that had the "nested" space been used, the rate by weight would have been higher and that defendants are merely using a device to create larger cubic space so that the rate will be higher. In short, plaintiff says the space rate should be applied to displacement in the hold and defendants say the rate should be applied to displacement at dockside of the cargo in the condition delivered by the shipper.

Plaintiff apparently challenged defendants' rates, but, since it was under contractual obligations to deliver the steel in Hawaii, it paid the rate under protest. It now seeks to recover the alleged overcharge. Defendants deny the overcharge and claim, moreover, that the challenge to the freight bill must be presented initially to the Federal Maritime Board.

■ At every step in a case, a court must be wary of its jurisdiction. All the more should it be wary when an action is removed from state court.[1] The rule is clear that if, at any time during a litigation, it is discovered that a case was improvidently removed, the court *must* remand the case to the state court regardless of whether a motion to remand is made by the parties.[2] The parties may not confer jurisdiction on the court by acquiescence in the removal.[3]

■ Removal may be effected only when the District Court would have had original jurisdiction of the matter.[4] That original jurisdiction must spring from the petition filed in state court and not from the petition for removal.[5] De-

---

1. "Due regard for the rightful independence of state governments, which should actuate federal courts, requires that they scrupulously confine their own jurisdiction to the precise limits which the statute has defined." Healy v. Ratta, 292 U.S. 263, 270, 54 S.Ct. 700, 703, 78 L. Ed. 1248; Shamrock Oil & Gas Co. v. Sheets, 313 U.S. 100, 61 S.Ct. 868, 85 L.Ed. 1214.

2. 28 U.S.C.A. § 1447(c)
"If at any time before final judgment it appears that the case was removed improvidently and without jurisdiction, the district court shall remand the case, and

may order the payment of just costs."
See Rand v. State of Arkansas, D.C. Ark., 191 F.Supp. 20; Dynamic Mfrs. v. Local 614 of Gen. Drivers, Warehousemen & Helpers of America, D.C.Mich., 103 F.Supp. 651.

3. Rand v. State of Arkansas, supra; St. Louis Smelting & Refining Co. v. Nix, 8 Cir., 272 F. 977; In re Foley, 9 Cir., 76 F. 390.

4. 28 U.S.C.A. § 1441.

5. Moore, Federal Practice. [8-3] p. 630: "Since the federal courts are courts of limited jurisdiction it is natural that their

fendants' petition for removal invokes § 1337 of Title 28 as its grounds for removal. This case, says defendant, rises under an "Act of Congress regulating commerce", i. e. the Intercoastal Shipping Act and the Shipping Act. These statutes do not give this court original jurisdiction of this case.[6] In the first instance, there is nothing in either statute specifically conferring jurisdiction on this Court. In the second instance, the concept "arising under an Act of Congress", better known as "Federal question", has a circumscribed meaning. To present a federal question, the decision of the case must directly affect, or derive its power from, a federal statute.[7] In the words of Justice Cardozo, "The right or immunity must be such that it will be supported if the Constitution or laws of the United

States are given one construction or effect, and defeated if they receive another."[8] This is not the case here. Plaintiff's petition suggests a conflict over the the Atlantic Hawaiian tariff and the result on the substantive issue will in no way directly affect, or be affected by, either federal statute.[9] Moreover, the very federal statutes which defendants submit give this Court original jurisdiction are the statutes which they now submit initially preclude this Court's jurisdiction.

The distinction between original and primary jurisdicton must be made clear. A case may properly originate in the Federal District Court on one jurisdictional ground and then, for different reasons, be referred to an administrative agency which has primary jurisdiction.[10]

jurisdiction be made to appear at the time it is invoked. This means that in the case of an action commenced in federal court and hence involving its original jurisdiction the natural and logical principle requires the federal question to appear in the complaint well pleaded, and not by way of anticipatory defenses or through irrelevant, extraneous material. And since removal jurisdiction is geared to original jurisdiction, there can be no removal on that basis where the federal question is presented for the first time in defendant's petition for removal or in his answer."
See Louisville & Nashville R. R. Co. v. Mottley, 211 U.S. 149, 29 S.Ct. 42, 53 L. Ed. 126.

6. However, jurisdiction is vested in the federal court under the Shipping Act for violations of Orders of the Federal Maritime Board. 46 U.S.C.A. § 829.

7. The Fifth Circuit has recently stated: "This Court has considered the manner by which removal jurisdiction in a federal question case is to be determined, and has said: " 'We look solely to the facts set out in the complaint to determine this issue. The federal question necessary to sustain jurisdiction must be an essential element of the plaintiff's cause of action. " 'Not every question of federal law emerging in a suit is the basis of the suit. Even an action that takes its origin in the laws of the United States is not necessarily one arising under those laws. It must really and substantially involve a

controversy respecting the validity or construction of such laws, and the determination of the cause must depend upon such validity or construction.' Armstrong v. Alliance Trust Co., 5th Cir. 1942, 126 F. 2d 164. See also Bentley v. Halliburton Oil Well Cementing Co., 5th Cir. 1949, 174 F.2d 788; 76 C.J.S. Removal of Causes § 305, [p.] 1151." Clinton v. Hueston, 5 Cir., 308 F.2d 908, 910 (1962).

8. Gully v. First National Bank, 299 U.S. 109, 112, 57 S.Ct. 96, 97, 81 L.Ed. 70. See this Court's opinion in United Gas Pipe Line Co. v. Brown, E.D.La., 207 F.Supp. 139.

9. The petition in the State Court discloses no more than a suit on a contract between private parties on a private association's freight rates. Later allegations made in the petition for removal or by facts adduced on the motion to stay do not create the federal question. See Note 5 supra. See also Structural Steel & Forge Co. v. Union Pacific R. Co., 10 Cir., 269 F.2d 714, cert. den. 361 U.S. 886, 80 S. Ct. 157, 4 L.Ed.2d 121.

10. The proposition is succinctly stated in 3 Davis, Administrative Law, § 19.01 p. 2: "The doctrine of primary jurisdiction is to guide a court in determining whether the court or agency should make the initial decision. "The precise function of the doctrine of primary jurisdiction is to guide a court in determining whether the court should refrain from exercising its jurisdiction until after an administrative agency has de-

In certain instances, administrative law completely divests the District Court of jurisdiction it might normally have had.[11] However, primary jurisdiction in an administrative agency based on a federal statute does not pre-suppose that the District Court had original jurisdiction. There must be some independent source of original jurisdiction.[12] Clearly, the Shipping Act might divest this Court of primary jurisdiction, but it does not confer original jurisdiction.[13]

The petition in the state court discloses diversity of citizenship between plaintiff and defendants. The claim against Matson Navigation Co. is for $18,871.80 and satisfies the jurisdictional amount. However, the claim against the Isthmian Lines, Inc., is only for $1,547.58 and is below the requisite amount. Consequently, the suit against Matson Navigation was properly removed[14], while the suit against Isthmian must be remanded to state court.

The remaining question is whether primary jurisdiction of this suit is vested in the Federal Maritime Board. Defendant maintains that this case involves a challenge to the reasonableness of a tariff and hence should first be addressed to the Maritime Board.[15] Plaintiff states that this case does not come within the jurisprudence defining primary jurisdiction and, in any event, reference to the Federal Maritime Board will deny plaintiff a trial by jury.

The Shipping Act does not, in terms, vest primary jurisdiction in the Federal Maritime Board. However, judicial reference of principles enunciated under the Interstate Commerce Act to the Shipping Act[16] and the growth of the primary jurisdiction concept under the Shipping Act make it necessary to consider whether this Court should proceed with this case without initial reference to the Maritime Board.

■ The rule of primary jurisdiction places initial exclusive jurisdiction of a controversy in the Federal Maritime Board when the case presents a question peculiarly addressed to the expertise of

termined some question or some aspect of some question arising in the proceeding before the court."
The Supreme Court has stated it thusly: "The Court thus applied a principle, now firmly established, that in cases raising issues of fact not within the conventional experience of judges or cases requiring the exercise of administrative discretion, agencies created by Congress for regulating the subject matter should not be passed over." Far East Conference v. United States, 342 U.S. 570, 574, 72 S.Ct. 492, 494, 96 L.Ed. 576.

11. See San Diego Bldg. Trades Council Millmen's Union, Local 2020 v. Garmon, 359 U.S. 236, 79 S.Ct. 773, 3 L.Ed.2d 2d 775; Garner v. Teamsters, Chauffeurs and Helpers Local Union No. 776, 346 U.S. 485, 74 S.Ct. 161, 98 L.Ed. 228.

12. See Note 4 supra.

13. "No power to fix rates is granted to the Board." Federal Maritime Board v. Isbrandtsen Co., 356 U.S. 481, 490, 78 S.Ct. 851, 857, 2 L.Ed.2d 926. The plaintiff does not rely on the statute to recover and could, apparently, under State law, recover if its claim was proven. See LSA–R.S. 45:1099, 13:3231. Thus the tariff sued on is not a federally-created

tariff and this action was cognizable, where originally brought, without reference to federal law or remedies. Hence, no federal statute is affected by its outcome and the action does not arise exclusively from federal law.

14. While the petition for removal does not state diversity as a ground for removal, diversity and jurisdictional amount in the suit against Matson Navigation Co. are disclosed by the petition in State Court. Thus, the record, as it comes to this Court from the State Court, discloses removability as to that action and is properly removed. Gold-Washing & Water Co. v. Keyes, 96 U.S. 199, 24 L.Ed. 656; Wells v. Russellville Anthracite Coal Mining Co., E.D.Ark., 206 F. 528.

15. A person may file a complaint with the Federal Maritime Board for a claim of unreasonableness in a tariff. 46 U.S.C.A. § 817. Section 18 of the Shipping Act (46 U.S.C.A. § 817) requires that the common carrier establish, observe and enforce just and reasonable rates.

16. United States Navigation Co. v. Cunard Steamship Co., 284 U.S. 474, 52 S.Ct. 247, 76 L.Ed. 408; see also Far East Conference v. United States, supra.

the Board or a question whose solution directly affects the uniformity sought by the Shipping Act.[17] The issue has generally been: does the matter actually in controversy call for determination of certain issues by a Congressionally-created agency before being finally decided by a court? In an effort to set guideposts of jurisdiction, reference has been had to the "fact question v. law question" test,[18] the "construction of a document v. fact-finding" test,[19] and the "uniformity-expertise" test.[20, 21] Without presuming to state a general rule distilled from the cases, it does seem safe to say that the spectrum of cases as applied to the case before this court runs from Great Northern Railway Co. v. Merchants Elevator Co., 259 U.S. 285, 42 S.Ct. 477, 66 L.Ed. 943, to United States v. Western Pacific Railroad Co., 352 U.S. 59, 77 S.Ct. 161, 1 L.Ed.2d 126.[22]

In Great Northern Railway, Justice Brandeis held that the question of whether a shipment of grain was included under the general rule or the exception of a tariff was a simple matter of construction of a document for the Court and should not be referred to the Interstate Commerce Commission. In Western Pacific, Justice Harlan held that the question of whether a shipment of steel casings filled with napalm gel was included in the term "incendiary bombs" in a railroad tariff required initial determination by experts and was within the exclusive primary jurisdiction of the Interstate Commerce Commission. The Court in Western Pacific Railroad reaffirmed the Great Northern Railway holding, stating that it stood for the proposition that where "the question is simply one of construction the courts may pass on it as an issue 'solely at law.' But where the words in a tariff are used in a peculiar or technical sense, and where extrinsic evidence is necessary to determine their meaning or *proper application*, so that 'the enquiry is essentially one of fact and of discretion in technical matters,' then the issue of tariff application must first go to the Commission." [23] (Emphasis supplied) Since the words "incendiary bombs" in the Western Pacific Railroad case were considered to have a technical meaning and were subject to custom and usage peculiar to the industry, the Court felt that this was not a mere matter of construction and consequently sent the case to the Commission. The same situation obtained in Texas & Pacific Ry. Co. v. American Tie & Timber Co., 234 U.S. 138, 34 S.Ct. 885, 58 L.Ed. 1255, where the Court held that a jury should not have been allowed to decide whether a load of cross-ties came within the term "lumber" in a tariff. The question was one primarily for the Interstate Commerce Commission. Even where a tariff was silent on a disputed point, the Court has held that the question is primarily one for the adminis-

17. "Uniformity and consistency in the regulation of business entrusted to a particular agency are secured, and the limited functions of review by the judiciary are more rationally exercised, by preliminary resort for ascertaining and interpreting the circumstances underlying legal issues to agencies that are better equipped than courts by specialization, by insight gained through experience, and by more flexible procedure." Far East Conference v. United States, supra, 342 U.S. at 574, 72 S.Ct. at 494.

18. Texas & Pac. Ry. Co. v. Abilene Cotton Oil Co., 204 U.S. 426, 27 S.Ct. 350, 51 L.Ed. 553.

19. Great Northern Railway Co. v. Merchants Elevator Co., 259 U.S. 285, 42 S.Ct. 477, 66 L.Ed. 943.

20. Texas & Pac. Ry. Co. v. American Tie & Timber Co., 234 U.S. 138, 34 S.Ct. 885, 58 L.Ed. 1255; Loomis v. Lehigh Valley R. R., 240 U.S. 43, 36 S.Ct. 228, 60 L.Ed. 517.

21. Far East Conference v. United States, supra.

22. One commentator doubts the validity of categorical tests and states that "[t]he principal reason behind the doctrine (Primary jurisdiction) is recognition of the need for orderly and sensible coordination of agencies and of courts." 3 Davis, Administrative Law, § 19.01 at p. 5.

23. United States v. Western Pacific Ry. Co., 352 U.S. 59, 65–66, 77 S.Ct. 161, 166.

trative agency.[24] The validity of a Board-approved shipping combination, allegedly within the ambit of the Anti-Trust Acts, has been initially referred to the Federal Maritime Board since the question was one addressed to the expertise of the Board.[25] When the question is one that anticipates considerable technical testimony dealing with the peculiarities of an industry, the Court directs us to refer it first to the Federal Maritime Board even where jurisdiction in the federal court is well-founded on other grounds.[26]

The question at bar is whether Freight Tariff 13 requires that the measurement of ocean freight be made in the hold or at dockside. The question then becomes, is this a mere matter of construction as in Great Northern Railway, or a matter for expert interpretation as in Western Pacific Railway, and American Tie & Timber Co., or, in fact, whether the tariff is silent on the whole matter as in Loomis v. Lehigh Valley R. R. Co., 240 U.S. 43, 36 S.Ct. 228, 60 L.Ed. 517.

■ Several portions of the tariff appear applicable but each one is couched in terms of less common usage than "incendiary bombs" or "lumber". Precisely what considerations go into measuring and charging for ocean freight on the dock or in the hold are surely better determined by the Federal Maritime Commission. Just as costing factors were important considerations in the Western Pacific Railway case, so too other practical considerations of similar nature must be involved in charging freight rates. It might even be that there is nothing at all in the tariff that decides the question. This is all the more reason to initially submit the tariff to the Board that first approved it. This court concludes that the question is within the primary jurisdiction of the Federal Maritime Board. The expertise of the Board and the need for uniformity strongly advise this course.[27] The holdings of the Supreme Court make this course imperative.

■ Plaintiff's claim for a jury trial need not detain us long. It might be sufficient to point out that plaintiff does not lose trial by jury through this procedure. Assuming it is involved here, it is merely deferred.[28] Moreover it is difficult to conclude that this point has never been presented to the Supreme Court in response to a demand for reference to an administrative agency. A question properly referrable to the Interstate Commerce Commission was instead presented to a jury in the American Tie & Timber case. The Supreme Court reversed holding that the Interstate Commerce Commission had primary jurisdiction.

This court concludes that plaintiff's right to trial by jury is not so circumscribed as to cause this court to refuse to apply the well-settled principles of primary jurisdiction.

Since it is the uncertainty as to certain factual issues which commends this case to the initial consideration of the Federal Maritime Board, factual issues are still in dispute and summary judgment is inappropriate.

IT IS ORDERED:

1) That the order of consolidation of CA 11934 and CA 11935 be, and the same is hereby VACATED.

2) That CA 11934 be and the same is hereby REMANDED to the Civil District Court for the Parish of Orleans, State of Louisiana

24. Loomis v. Lehigh Valley R. R. Co., supra.

25. Far-East Conference v. United States, supra; United States Navigation Co. v. Cunard Steamship Co., supra.

26. Supra Note 22.

27. The possibility of the Port of New Orleans having one rule on the tariff because it is in the Eastern District of Louisiana and the Port of Lake Charles having another rule because it is in the Western District of Louisiana supports this reference to the Board for the purposes of uniformity.

28. 46 U.S.C.A. § 829.

3) That CA 11935 be referred to the Federal Maritime Board for initial determination

4) That proceedings in CA 11935 be and the same are hereby STAYED pending initial determination by the Federal Maritime Board

5) That this court will retain jurisdiction of CA 11935 during the pendency of proceedings before the Federal Maritime Board

6) That defendants' motion for summary judgment be, and the same is hereby DENIED.