**NORFOLK AND WESTERN RAILWAY COMPANY, Plaintiff,**

v.

**MISSOURI FARMERS ASSOCIATION, INC., Defendant.**

No. 81–602C(A).

United States District Court, E. D. Missouri, E. D.

Jan. 7, 1982.

Albert E. Schoenbeck, St. Louis, Mo., for plaintiff.

Richard S. M. Emrich, Chicago, Ill., Alfred J. Hoffman, Columbia, Mo., Michael P. Casey, St. Louis, Mo., for defendant.

## MEMORANDUM AND ORDER

HARPER, District Judge.

This matter is before the Court on defendant's motion to dismiss plaintiff's complaint on the ground that primary jurisdiction is vested in the Interstate Commerce Commission and that, therefore, the District Court lacks subject matter jurisdiction.

According to the complaint, plaintiff is a Virginia corporation having its principal place of business at Roanoke, Virginia, and is engaged in the business of owning and

operating a railroad in Missouri and other states. Defendant is a corporation authorized to transact business in Missouri.

Plaintiff provides railroad transportation services and side track facilities to defendant at sites throughout Missouri. In 1978, plaintiff requested that defendant execute a lease for the use of plaintiff's side track facilities serving defendant. The standard annual rental rate charged shippers using plaintiff's side tracks is $2.80 per track foot per year and the annual rental rate for land owned or controlled by plaintiff is twenty cents per track foot per year. Defendant refused to execute such a lease contending that the use of the side track is included in the plaintiff's long-haul tariff rates.

Plaintiff has brought suit against defendant on two counts. In Count I plaintiff asks that this Court enter a declaratory judgment "that the use of plaintiff's side track facilities by defendant MFA at the aforementioned locations is not part of or included in the plaintiff's tariffs for the transportation services plaintiff provides for shippers from and to various locations within the United States and Canada," and, "that plaintiff is not required to provide transportation services to defendant on plaintiff's side track facilities serving defendant unless defendant executes a lease for the use of said side track facilities at the standard yearly rental rate charged all other shippers in similar circumstances * * *."

Count II prays for judgment against defendant in the sum of $59,949.00 plus costs for unpaid annual rental fees since 1978.

■ The Court finds that there is no subject matter jurisdiction in the cause before it for two reasons, the first of which is that plaintiff's complaint does not comply with Rule 8 of the Federal Rules of Civil Procedure, in that there is no sufficient statement of a basis for jurisdiction. Plaintiff expressly brings this action on a common-law contract theory. However, the complaint fails to properly set out diversity jurisdiction under 28 U.S.C. § 1332. Plaintiff alleges that defendant is a corporation authorized and in fact transacting business in the State of Missouri and that the amount in controversy exceeds $10,000.00. Under 28 U.S.C. § 1332(c) a corporation has dual citizenship, being a citizen for diversity purposes both of the state where it is incorporated and the state where it has its principal place of business. To establish diversity an allegation regarding both bases of citizenship must be made. Plaintiff has not alleged defendant's state of incorporation nor its principal place of business.

Secondly, even if diversity of citizenship were properly pleaded, or even if this Court found jurisdiction under 28 U.S.C. § 1337, plaintiff's case would be dismissed under the doctrine of primary jurisdiction which calls for judicial deference to the Interstate Commerce Commission for the initial determination of plaintiff's claim which "requires the resolution of issues which, under a regulatory scheme, have been placed within the special competence of an administrative body." *United States v. Western Pac. R. Co.*, 352 U.S. 59, 64, 77 S.Ct. 161, 165, 1 L.Ed.2d 126 (1956).

Plaintiff contends that its complaint is brought before the Court on a common-law contract theory and is not a question of an addition to or deletion from plaintiff's tariffs. Plaintiff contends that the issues raised by the complaint do not fall within the primary jurisdiction of the Interstate Commerce Commission as discussed in *Southwestern Electric Power Co. v. Burlington Northern, Inc.*, 475 F.Supp. 510, 520 (E.D.Tex.1979) [SWEPCO], wherein the Court stated:

"The Interstate Commerce Act refers administrative questions to the Commission, and the Commission has exclusive jurisdiction over violations of the Act that require a technical determination. Reparations, cease and desist orders, whether a rate falls within the zone of reasonableness, and suspension order decisions are examples of technical determinations that are confined to the Commission by the Act. However, the federal courts retain jurisdiction where the claimant relies on common law grounds of contract or tort and does not ask the Court to invade the primary jurisdiction

of the Commission by making a technical determination." PP. 520, 521.

SWEPCO is inapplicable to the issues before the Court. SWEPCO was an attempt to deal with the question, "Can the railroads, as common carriers, contract with shippers for a freight rate that is binding on the railroads until such time as the ICC determines that the rate has become unlawful and no longer falls within the zones of reasonableness as established by the ICC?" Id. page 514.

The case arose when the railroad entered a long-term agreement with the plaintiff-shipper for transportation of coal. The shipper relied on the agreed rate in contracting for coal purchases. Subsequently, the railroad announced its intention to breach the contract by publishing a tariff higher than that provided for in the agreement. The ICC labeled the conduct of the railroad as amounting to "bait and switch tactics," ICC Docket No. 36970, Annual Volume Rates on Coal-Wyoming to Flint Creek, Arkansas, May 25, 1979, but concluded that the agency was without power to compel the railroad to file the agreed rate. Nor could the Commission determine that a breach of contract had occurred since the Commission felt the courts were the proper forum for breach of contract remedies with respect to agreements reached prior to November 9, 1978. (On that date, Ex Parte No. 358–F, Change of Policy, Railroad Contract Rates, was served.)

This policy statement encouraged the filing of contract rates in appropriate circumstances and made clear that rail contract rates were not considered to be illegal per se. (See also Ex Parte No. 358–F, Change of Policy, Railroad Contract Rates, April 4, 1979, 361 ICC 205).

Additionally, under these same policy statements, the pre-November, 1978 agreements could not be given any weight in determining a maximum reasonable tariff level. However, there were no effective remedies available in the courts if the ICC found an increase filed by the railroad, in violation of a preexisting agreement, to be reasonable. Courts could not award damages to shippers that would have the effect of reducing their transportation charges below the rate on file with the Commission. *Montana-Dakota Co. v. Northwestern Public Service Co.*, 341 U.S. 246, 251, 71 S.Ct. 692, 695, 95 L.Ed. 912 (1951); *Lowden v. Simonds-Shields-Lonsdale Grain Co.*, 306 U.S. 516, 520, 59 S.Ct. 612, 83 L.Ed. 953 (1939); *Farley Terminal Co., Inc. v. Atchison, Topeka & Santa Fe Ry. Co.*, 522 F.2d 1095, 1098 (9th Cir. 1975). Courts could not suspend or enjoin the effectiveness of a rate on file with the Commission. *Seaboard Allied Milling Corp. v. Southern Ry. Co.*, 442 U.S. 444, 99 S.Ct. 2388, 60 L.Ed.2d 1017 (1979); *United States v. SCRAP*, 412 U.S. 669, 93 S.Ct. 2405, 37 L.Ed.2d 254 (1973); *Arrow Transportation Co. v. Southern Ry.*, 372 U.S. 658, 83 S.Ct. 984, 10 L.Ed.2d 52 (1963). The principles of those cases would also preclude a court from ordering a carrier to file a superseding rate change in accordance with a contract, since that would have the same effect as suspending a rate on file. Increased Rates on Coal, BN, Montana to Superior, Wisc., 362 ICC 625 (1980). The District Court in SWEPCO, by holding the railroad to its contract rate until a determination of reasonableness could be made by the ICC, attempted to resolve the inequities of a situation which at that time left the shipper without a remedy.

The ICC since SWEPCO has taken steps to remedy the SWEPCO problem. Under recent policy decisions the ICC has announced that pre-November, 1978 agreements will be given weight in considering the reasonableness of tariff increases. See Ex Parte No. 359–F served February 21, 1980, and Increased Rates on Coal, BN, Montana to Superior, Wisconsin, 362 ICC 625 (1980).

Additionally, the Staggers Rail Act of 1980 § 208(a), 94 Stat. 1908 added § 10713 to the Interstate Commerce Act. This section allows railroad carriers and purchasers of rail services "to provide specified services under specified rates and conditions. Such a rail carrier may not enter into a contract with purchasers of rail service except as provided in this section." Contracts under

§ 10713 must be filed with and approved by the ICC.

SWEPCO and the ICC policy statements are only relevant to the matter before this Court insofar as the ICC has articulated its encouragement of rail service contract rates as in furtherance of the national rail policy. In the case before the Court there is no pre-existing contract rate issue. Rather, this is a case where the carrier or shipper may petition for a declaratory order pursuant to § 554(e) of the Administrative Procedure Act, 5 U.S.C. § 554(e), before entering the contract. See Ex Parte No. 358–F Change of Policy, Railroad Contract Rates, April 4, 1979, 361 ICC 205, 208.

Plaintiff argues that the matter before the Court has "nothing to do with line-haul rates, the railroad tariffs or anything else which would invoke the primary jurisdiction of the Interstate Commerce Commission." Plaintiff argues alternatively that if the Court finds that line-haul rates are involved, then the kind of delivery service included in line-haul rates is a matter that can be decided by a court without initial deference to the ICC, citing *Sec'y of Agriculture v. United States*, 347 U.S. 645, 647, 74 S.Ct. 826, 828, 98 L.Ed. 1015 (1953).

■ Plaintiff's argument that the matter before the Court has nothing to do with line-haul rates is specious. Plaintiff's prayer for relief specifically asks that this Court declare that use of plaintiff's side tracks is not included in plaintiff's line-haul tariffs. To so declare, the Court would necessarily have to review the published tariffs. The Court need not always defer to the ICC in matters of tariff construction. There is "no need to refer the matter of construction to the Commission if that body, in prior releases or opinions, has already construed the particular tariff at issue or has clarified the factors underlying it." *United States v. Western Pac. Ry. Co.*, 352 U.S. 59, 69, 77 S.Ct. 161, 167, 1 L.Ed.2d 126 (1956). There is no allegation that this tariff has ever been the subject of ICC review.

■ The Court also need not defer to the ICC if the construction of the tariff does not call for an "examination of the underlying cost allocation which went into the making of the tariff in the first instance." *United States v. Western Pac. Ry. Co.*, supra at 69, 77 S.Ct. at 167.

The problem of cost allocation, however, is exactly what plaintiff's complaint presents to the Court, and thus necessitates a determination of reasonableness of rates, a matter that has been entrusted by Congress solely to the ICC. Plaintiff's framing of the issue in terms of "rent" and "leases" as opposed to transportation rates does not divest the ICC of its jurisdiction. Plaintiff's argument that maintenance charges are in the nature of rent as distinguished from transportation charges is not new to the ICC. The issue of a separate maintenance charge for the use of a switching connection was addressed by the ICC in *General Motors Corp., Long Island Railway Private Sidetrack*, 351 ICC 691 (1976). There the agency stated: "The task of delivering freight is an integral of the transportation obligation, and, therefore, as a general rule, the delivery of freight is a service performed under a carrier's line-haul rate. Correspondingly, the expenses attributable to delivering freight should generally be met from a carrier's line-haul revenues." At 696, citing Propriety of Operating Practices-Packing Sheds, 246 ICC 273, 283 (1941); Split Deliveries and Drayage Allowance at New York, 245 ICC 40, 41 (1941).

■ Likewise, it is not for this Court to determine that the delivery obligation owed the shipper does not include delivery via plaintiff's side tracks. Contrary to plaintiff's contentions, the scope of the carrier's obligation to deliver has been first determined by the ICC with the courts then reviewing that decision if necessary. *Armour & Co. v. Alton R. Co.*, 312 U.S. 195, 61 S.Ct. 498, 85 L.Ed. 771 (1941); *Adams v. Mills*, 286 U.S. 397, 52 S.Ct. 589, 76 L.Ed. 1184 (1932); *Atchison Ry. v. United States*, 295 U.S. 193, 55 S.Ct. 748, 79 L.Ed. 1382 (1935); *Loomis v. Lehigh Valley Ry. Co.*, 240 U.S. 43, 36 S.Ct. 228, 60 L.Ed. 517 (1916). And where line-haul service begins

and ends is a question of fact to be determined by the Commission. *United States v. U. S. Smelting,* 339 U.S. 186, 70 S.Ct. 537, 94 L.Ed. 750 (1950). *Sec'y of Agriculture v. United States,* 347 U.S. 645, 74 S.Ct. 826, 98 L.Ed. 1015 (1954), which plaintiff cites for the proposition that jurisdiction to decide what services line-haul rates include is itself an appeal from an initial ICC determination on the issue. The Court clearly stated "the real question before us is whether the Commission has met [the claims] with an adequacy that satisfies the requirement of judicial review, limited though its scope may be." Id. 347 U.S. at 650, 74 S.Ct. at 829.

The type of delivery necessary to make the freight accessible to its consignee is an issue involving complex factual determinations that are within the primary jurisdiction of the ICC. The issue cannot be simplistically summarized as plaintiff has done by stating that the carrier need deliver only to team tracks or private sidings. "Neither the statute nor any applicable principle of governing law can be said to mark the boundary [point at which the common carrier's duty to transport comes to an end] under all circumstances and conditions and in all cases." *Armour & Co. v. Alton Ry. Co.,* 312 U.S. at 200, 61 S.Ct. at 501.

Plaintiff also contends that the rate Norfolk pays results in discrimination against other shippers who are paying a rental fee for use of side tracks. This argument not only presumes that the published tariff did not include the cost of delivery via the side tracks, but also presumes that delivery via the side tracks is more expensive than delivery via team tracks. This may not always be the case. For example, if present side track traffic is diverted to team tracks, there is every possibility that the increased congestion and resultant delay could prove more expensive than the present side track delivery. Again the cost analysis necessary to the factual determination of a reasonable rate makes this a matter for ICC consideration.

The Court finds that all issues presented by plaintiff's complaint falls within the primary jurisdiction of the Interstate Commerce Commission. Accordingly, defendant's motion to dismiss for lack of subject matter jurisdiction is granted and plaintiff's complaint is dismissed for lack of jurisdiction.