The **GOVERNMENT OF GUAM,** et al., **Plaintiffs,**

v.

**AMERICAN PRESIDENT LINES, LTD., et al., Defendants.**

**Civ. A. No. 92–0622–LFO.**

United States District Court, District of Columbia.

Jan. 11, 1993.

Munford Page Hall, II, L. Daniel Mullaney, Dorsey & Whitney, Washington, DC, Arthur John Armstrong, of counsel, Arthur John Armstrong, P.C., McLean, VA, for plaintiffs, Government of Guam, Pacific Intern. Co., Inc., Town House Dept. Store, Inc., Micronesian Brokers, Inc., and R.R. Cruz Market.

I. Michael Greenberger, John Townsend Rich, Kenneth F. Sparks, Shea & Gardner, Washington, DC, for defendant American President Lines, Ltd.

Richard L. Brusca, Raina H. Fishbane, Paul R. Noe, Skadden, Arps, Slate, Meagher & Flom, Washington, DC, for defendant Sea–Land Service, Inc.

## MEMORANDUM

OBERDORFER, District Judge.

Plaintiffs in this action are the Government of Guam and four Guam corporations that ship goods between Guam and the rest of the United States. Defendants are American President Lines, Ltd. (APL), and Sea–Land Service, Inc. (Sea–Land), the two United States ocean carriers that provide service to and from Guam. Plaintiffs challenge the defendants' shipping rates under the Shipping Act, 1916, 46 U.S.C.App. §§ 801–842, and the Intercoastal Shipping Act, 1933, 46 U.S.C.App. §§ 843–848. Currently pending before the Court are three motions: plaintiffs' motion to stay proceedings pending completion of parallel proceedings currently before the Federal Maritime Commission (FMC or Commission); defendants' motion to dismiss for lack of subject matter jurisdiction; and plaintiffs' motion to maintain a class action and to certify the class. For the reasons stated below, the complaint will be dismissed for lack of subject matter jurisdiction.

### I.

In order to understand the posture of the present action, it is necessary to understand the parallel proceeding in the Commission. On December 7, 1989, the Government of Guam filed a complaint with the Commission. That complaint is virtually identical to the complaint in the instant case. Each complaint includes four counts. Counts I and II allege that both defendants charge Guam shippers unjust, unreasonable, and discriminatory rates in violation of sections 16 First, 17, and 18(a) of the Shipping Act, 46 U.S.C.App. §§ 815 First, 816, & 817(a), and section 2 of the Intercoastal Shipping Act, 46 U.S.C.App. § 844.

Counts III and IV allege that defendant Sea–Land operates as a water common carrier without having a required tariff on file with the Commission,[1] and also that Sea–Land improperly charges varying rates for similarly situated shippers, in violation of sections 16 First and 17 of the Shipping Act, 46 U.S.C.App. §§ 815 First & 816, and section 2 of the Intercoastal Shipping Act, 46 U.S.C.App. § 844.

On March 9, 1990, an administrative law judge granted Guam leave to amend the Commission complaint to add four shippers as plaintiffs. Three of those shippers are among the plaintiffs in the present case. In the same ruling, the ALJ dismissed that portion of the complaint seeking reparations on behalf of all similarly situated Guam shippers under a *parens patriae* theory. In so ruling, the ALJ relied on Commission decisions holding that reparations may be awarded only to those who have actually paid unreasonable rates unless there has been a valid assignment from one with a legal right to reparations. The Commission proceeding is presently ongoing.

Plaintiffs' complaint was filed in this Court on March 10, 1992. Plaintiffs' asserted purpose in bringing this action in court is to "toll" the two-year statute of limitations for the numerous Guam shippers that have allegedly been injured by defendants' shipping rates. They have thus moved for certification of a class consisting of shippers and persons who have dispatched or received shipments into or out of Guam via the defendant carriers. At the same time, plaintiffs have moved for a stay of proceedings in this case pending the Commission's determination in the parallel administrative proceeding. Plaintiffs thus concede that the Commission has the task of resolving the merits of the dispute; they call on this Court essentially to preserve, and ultimately to administer, the claims of the class.

## II.

■ The first (and, as it turns out, the only) issue to be addressed is that of subject matter jurisdiction.[2] Plaintiffs concede that neither the Shipping Act nor the Intercoastal Shipping Act creates an express private right of action to challenge carrier rates in federal district court. The Shipping Act does include an express right of action for reparations for rate violations, but that right of action provides for recovering reparations solely through a Commission proceeding. Section 22(a) of the Shipping Act provides:

> Any person may file with the Federal Maritime Commission a sworn complaint setting forth any violation of this chapter by a common carrier by water in interstate commerce ... and asking reparation for the injury, if any, caused thereby.... The Commission, if the complaint is filed within two years after the cause of action accrued, may direct the payment, on or before a date named, of full reparation to the complainant for the injury caused by such violation.

46 U.S.C.App. § 821(a). The Intercoastal Shipping Act incorporates the identical procedure for filing complaints, and provides further that, upon a finding of "unjustness or unreasonableness" of rates, the Commission "shall direct full reparation to the complainant of the difference between the

---

1. As of June 23, 1989, Sea–Land began filing tariffs with the Interstate Commerce Commission (ICC) instead of the FMC. The two Commissions have separate jurisdictions, the FMC governing port-to-port water carriers and the ICC governing intermodal (e.g., rail-and-water) carriers. *See* 46 U.S.C.App. §§ 801, 832, & 845b.

2. Plaintiffs cite strong authority for their contention that, if this action can be entertained in this Court, a stay pending the Commission's decision is appropriate. In *Carnation Co. v. Pacific Westbound Conference*, 383 U.S. 213, 222–23, 86 S.Ct. 781, 787, 15 L.Ed.2d 709 (1966), the Supreme Court considered an antitrust challenge to rate-making agreements that were the subject of ongoing FMC proceedings and ruled that the district court should have stayed the action instead of dismissing it. Indeed, the Court specifically relied upon the potential loss of plaintiffs' rights to sue because of the statute of limitations. However, in *Carnation* as well as the other cases cited by plaintiffs, there was an independent basis of jurisdiction in the district court. If this Court has no jurisdiction of the action in the first place, then the case must be dismissed and the issue of a stay is never reached.

charge collected and the just and reasonable rate, fare, or charge, plus interest...." 46 U.S.C.App. § 845a. Commission orders relating to violations of either Act are issued only after full hearing, 46 U.S.C.App. § 822, and following discovery supervised by the Commission, 46 U.S.C.App. § 826.

Plaintiffs argue, however, that an implied right of action in the district court should be found. They contend that the factors set forth in *Cort v. Ash,* 422 U.S. 66, 95 S.Ct. 2080, 45 L.Ed.2d 26 (1975), support the inference [3] of a cause of action here. The *Cort* factors are: (1) whether the plaintiff is part of the class for whose benefit the statute was enacted; (2) the evidence of legislative intent; (3) the purposes of the statute; and (4) whether the cause of action is one traditionally relegated to state law. It appears, however, that the *Cort* analysis is not directly applicable in this case. The Court stated that the four factors were relevant to "determining whether a private remedy is implicit in a statute *not expressly providing one.*" *Id.* at 78, 95 S.Ct. at 2088 (emphasis added). In this case a remedy is expressly provided in section 22(a) of the Shipping Act. That remedy is a Commission proceeding for reparations.

Moreover, subsequent Supreme Court decisions have clarified the disfavored status of implied rights of action where the statute provides other express remedies.

It is also an "elemental canon" of statutory construction that where a statute expressly provides a remedy, courts must be especially reluctant to provide additional remedies.... In such cases, "[i]n the absence of strong indicia of

contrary congressional intent, we are compelled to conclude that Congress provided precisely the remedies it considered appropriate."

*Karahalios v. National Fed'n of Fed. Employees,* 489 U.S. 527, 532, 109 S.Ct. 1282, 1286, 103 L.Ed.2d 539 (1989) (quoting *California v. Sierra Club,* 451 U.S. 287, 293, 101 S.Ct. 1775, 1779, 68 L.Ed.2d 101 (1981)); *see also Massachusetts Mutual Life Ins. Co. v. Russell,* 473 U.S. 134, 147, 105 S.Ct. 3085, 3093, 87 L.Ed.2d 96 (1985) ("where a statute expressly provides a particular remedy or remedies, a court must be chary of reading others into it"). As the Court of Appeals has noted, the specification of an administrative remedy "normally excludes duplicative judicial jurisdiction." *Danielsen v. Burnside-Ott Aviation Training Ctr.,* 941 F.2d 1220, 1227 (D.C.Cir.1991) (quoting *Miscellaneous Service Workers, Teamsters Local 427 v. Philco-Ford Corp.,* 661 F.2d 776, 781 (9th Cir.1981)). At the very least, therefore, there is a strong presumption against inferring a cause of action in the present circumstances. Indeed, since plaintiffs have provided no evidence of congressional intent in support of such a right of action, the conclusion that none should be inferred is "compelled" under *Sierra Club.* 451 U.S. at 293, 101 S.Ct. at 1778.[4]

The structure of the statutory scheme casts doubt on plaintiffs' argument for finding an implied cause of action. First, there is the express remedy for reparations in a Commission proceeding, as previously discussed. Second, other sections of the Shipping Act provide for other types of actions to be brought in the federal district courts, but not suits for reparations. For

---

**3.** In the interest of narrowing the gap between ordinary language and the language of the law, it is noted that courts have been somewhat confused about the proper use of the word "imply" in reference to causes of action. *Compare, e.g., Cort,* 422 U.S. at 68, 95 S.Ct. at 2083 ("whether a private cause of action ... is to be *implied*"), *with, e.g., id.* at 78, 95 S.Ct. at 2088 ("it would be inappropriate to *infer* a cause of action"). Properly speaking, only a statute or its source (Congress) can *imply* a cause of action; courts *infer* causes of action. *See* William Strunk Jr. & E.B. White, *The Elements of Style* 49 (3d ed. 1979).

**4.** Even if the *Cort* factors did apply by themselves, it is unlikely that the inference of a right of action would be warranted. As discussed below, Congress's specification of the FMC remedy in section 22(a) suggests that it did not intend to include an additional, federal court remedy for reparations. Thus, the first and third *Cort* factors may not weigh in favor of plaintiffs' argument. As for the second factor, plaintiffs do not cite any legislative history to support their contention.

example, sections 29 and 30 of the Shipping Act, 46 U.S.C.App. § 828 & 829, provide that parties may sue in the district courts to enforce specific Commission orders, including reparations awards. By presupposing a specific Commission order, these provisions emphasize that Congress's specification of the administrative remedy was intentional. Finally, the Shipping Act discloses a conspicuous contrast with the Interstate Commerce Act, after which the Shipping Act was modeled, *see United States Navigation Co. v. Cunard S.S. Co.*, 284 U.S. 474, 481, 52 S.Ct. 247, 249, 76 L.Ed. 408 (1932). The Interstate Commerce Act expressly permits the filing of either a complaint in the ICC or a civil action in federal district court, 49 U.S.C. § 11705(c)(1), again suggesting that Congress's exclusion of a district court remedy under the Shipping Act was not inadvertent.

Plaintiffs urge that several courts have found implied causes of action under the Shipping Acts. In two of the cases that plaintiffs cite, courts inferred causes of action for *carriers* seeking payment of an established tariff rate. *Sea–Land Serv., Inc. v. Murrey & Son's Co.*, 824 F.2d 740 (9th Cir.1987); *Maritime Serv. Corp. v. Sweet Brokerage De Puerto Rico, Inc.*, 537 F.2d 560 (1st Cir.1976). *But see Roco Worldwide, Inc. v. Constellation Navigation*, 660 F.2d 992 (4th Cir.1981) (no implied cause of action for carriers). This result is not particularly surprising, however, because section 22(a) of the Shipping Act provides no remedy at all for carriers, in contrast to the express Commission remedy for shippers. The strong arguments against inferring a cause of action were therefore inapplicable in those cases.

The case that is most persuasive and most clearly on point is *D.L. Piazza Co. v. West Coast Line, Inc.*, 210 F.2d 947 (2d Cir.), *cert. denied*, 348 U.S. 839, 75 S.Ct. 42, 99 L.Ed. 661 (1954). In that case, a shipper filed an action in the district court for reparations under the Shipping Act after it had initiated a proceeding in the Commission and failed to recover all of the reparations it had sought. Judge Augustus Hand wrote for the Second Circuit that entertaining the action in the district court

> would make the action an original suit to recover reparations under the Shipping Act, and ... the [FMC] has exclusive primary jurisdiction over such matters.... The [shipper] cannot proceed originally here in the district court without defeating this primary jurisdiction. Thus, the [shipper's] only remedy is to review the decision of the [FMC] by way of the appropriate statutory procedure.

*Id.* at 948. The statutory procedure for appellate review of the Commission's orders vests exclusive jurisdiction in the Court of Appeals. 28 U.S.C. § 2342.

Plaintiffs rely upon two district court cases that were brought by shippers. In the first, *Firearms Import & Export Corp. v. Lykes Bros. Steamship Co.*, 458 F.Supp. 88 (S.D.Fla.1978), the shipper's action was based not on the Shipping Act, but on a separate cause of action in admiralty, coupled with diversity jurisdiction. Moreover, to the extent that language in the opinion may suggest the existence of an implied district court remedy under section 22(a), it is *dictum*. The other decision, *Orleans Materials & Equipment Co. v. Isthmian Lines, Inc.*, 218 F.Supp. 322 (E.D.La.1963), did not involve a challenge to the reasonableness of rates and, moreover, is questionable in its reasoning. The court's holding—that federal jurisdiction existed—apparently rested on the conclusion that an "allegation of interstate commerce" alone was sufficient to establish jurisdiction under 28 U.S.C. § 1337. *Id.* at 324. That conclusion is incorrect: section 1337, like section 1331, confers jurisdiction only when the claim "arises under" a federal statute. *General Comm. of Adjustment v. Missouri–Kan.–Tex. R.R. Co.*, 320 U.S. 323, 337, 64 S.Ct. 146, 152, 88 L.Ed. 76 (1943); 13B Wright, Miller & Cooper, *Federal Practice & Procedure: Jurisdiction* § 3574, at 237–38 (1984). In any event, these two district court decisions do not overcome the authority provided by the Second Circuit's *Piazza* decision and the Supreme Court's recent cases on implied causes of action.

Plaintiffs also argue that the express remedy provided in the statute is ineffective. There is little doubt that shippers as a group would have a more powerful tool for enforcing the Shipping Acts if given a federal district court right of action. Most important, the Commission lacks a class action procedure. The danger of placing much weight on this argument, however, is that it quickly leads to a judicial re-writing of the law as Congress enacted it. From all indications it appears that Congress did not intend to grant shippers a right of action in the district court. Moreover, potential class members do have an effective remedy: they can file a complaint with the Commission, where it will, for aught that appears, be consolidated with the other complaints in the FMC proceeding. Plaintiffs insist that the Commission remedy has inherent procedural limitations, as evidenced by the rejection of Guam's *parens patriae* theory of recovery for the entire class. The rejection of Guam's *parens patriae* theory is subject to review in the Court of Appeals. It may also be noteworthy that the rejection of Guam's theory appears to have been based on substantive, not procedural, rulings by the Commission. Thus, to the extent that the Commission's ruling on this issue proves to be correct on appeal, the ruling simply shows the scope and nature of the remedy provided by Congress under the Shipping Act. This serves to emphasize again that the unique remedy of a Commission complaint for reparations, although it may have its limitations, is the remedy that Congress expressly provided in the statute.

## III.

Because there is no cause of action, express or implied, for a shipper to challenge a carrier's rates in the district court under the Shipping Act or the Intercoastal Shipping Act, this action must be dismissed for lack of subject matter jurisdiction. However, in light of the possibility that the Court

of Appeals might conclude otherwise, the parties have filed supplemental briefs on the application of the statute of limitations to the claims of putative class members in the event of a favorable appeal. Since class members face a two-year statute of limitations, their claims might expire during the pendency of an appeal unless the limitations period is tolled.

■ Generally, the filing of a complaint seeking to represent a class tolls the statute of limitations "for all members of the putative class until class certification is denied." *Crown, Cork & Seal Co. v. Parker*, 462 U.S. 345, 354, 103 S.Ct. 2392, 2397, 76 L.Ed.2d 628 (1983). The same tolling rule will apply to the situation presented here: where class claims are dismissed before a ruling on certification and as part of a decision to dismiss the entire case. *Jones v. Califano*, 576 F.2d 12, 21 n. 15 (2d Cir.1978); *Jimenez v. Weinberger*, 523 F.2d 689, 696 (7th Cir.1975) (Stevens, J.), *cert. denied*, 427 U.S. 912, 96 S.Ct. 3200, 49 L.Ed.2d 1204 (1976).[5] Thus, in the event that the Court of Appeals concludes that plaintiffs do have a remedy in this Court, the limitations period for class members should be tolled from the date on which plaintiffs filed their motion for class certification. However, that issue is not properly presented for definitive resolution at the present stage of the proceedings.

## IV.

For the foregoing reasons, the accompanying Order dismisses this action for lack of subject matter jurisdiction.

## ORDER

For the reasons stated in the accompanying Memorandum, it is this 11th day of January, 1993, hereby; and it is further

ORDERED: that defendants' motion to dismiss for lack of subject matter jurisdiction should be, and is hereby, GRANTED; and it is further

---

5. *In re Catawba Indian Tribe of South Carolina*, 973 F.2d 1133 (4th Cir.1992), is not to the contrary. In that case, the trial court had rejected certain class claims on alternative grounds, including an apparent assumption that a pending

motion for class certification did not toll the statute of limitations. The Fourth Circuit denied a petition for a writ of mandamus on a separate basis, expressing "no opinion" on the tolling issue. *Id.* at 1138 n. 5.

ORDERED: that this action is DISMISSED.