The **GOVERNMENT OF GUAM**, et al., Appellants,

v.

**AMERICAN PRESIDENT LINES**, et al., Appellees.

No. 93–7023.

United States Court of Appeals, District of Columbia Circuit.

Argued May 13, 1994.

Decided July 8, 1994.

Curtis C. Mechling, New York City, argued the cause for appellants. With him on the briefs was Panagiotis C. Bayz, Washington, DC. Marvin G. Pickholz, New York City, entered an appearance.

I. Michael Greenberger, Washington, DC, argued the cause for appellees. With him on the brief were John Townsend Rich, Richard L. Brusca, Washington, DC, and Robert S. Zuckerman, Liberty Corner, NJ. Raina H. Fishbane, Washington, DC, entered an appearance.

Before: MIKVA, Chief Judge, and BUCKLEY, and ROGERS, Circuit Judges.

Opinion for the Court filed by Circuit Judge ROGERS.

ROGERS, Circuit Judge:

Appellant shippers, including the Government of Guam,[1] sought reparations from ap-

---

1. Appellants are the Government of the Territory of Guam, Pacific International Co., Inc., Town

pellee carriers[2] in a proceeding before the Federal Maritime Commission for allegedly unlawful rates under the Shipping Act, 1916, and the Intercoastal Shipping Act, 1933.[3] Appellants thereafter filed a virtually identical claim in the United States District Court for the District of Columbia. The district court dismissed the complaint for lack of subject-matter jurisdiction. Appellants now contend that the district court erred by not inferring an implied private civil action under the Shipping Acts, and by not allowing appellants an opportunity to amend the complaint. For substantially the reasons set forth in the thoughtful opinion of the district court, *Government of Guam v. American President Lines, Ltd.*, 809 F.Supp. 150 (D.D.C.1993) (*Guam I*), we affirm the dismissal of the complaint. Further, we hold that appellants have waived the right to raise the amendment claim of error on appeal because they did not file a motion to amend, or seek leave to amend, the complaint in the district court, and they have presented no special circumstances to excuse their failure to do so.

## I.

The context in which this appeal arises is set forth in the District Court's opinion from which we quote:

On December 7, 1989, the Government of Guam filed a complaint with the Commission. That complaint is virtually identical to the complaint in the instant case. Each complaint includes four counts. Counts I and II allege that both defendants charge Guam shippers unjust, unreasonable, and discriminatory rates in violation of sections 16 First, 17, and 18(a) of the Shipping Act, 46 U.S.C.App. §§ 815 First, 816, & 817(a), and section 2 of the Intercoastal Shipping Act, 46 U.S.C.App. § 844. Counts III and IV allege that defendant Sea–Land operates as a water common carrier without having a required tariff on file with the Commission,* and also that Sea–Land im-

House Department Stores, Inc., Micronesian Brokers Incorporated, and R.R. Cruz Market.

2. Appellees are American President Lines, Ltd. and Sea–Land Service, Inc.

3. Two statutes are at issue. Appellants alleged that appellee carriers charged rates in violation

properly charges varying rates for similarly situated shippers, in violation of sections 16 First and 17 of the Shipping Act, 46 U.S.C.App. §§ 815 First & 816, and section 2 of the Intercoastal Shipping Act, 46 U.S.C.App. § 844.

* As of June 23, 1989, Sea–Land began filing tariffs with the Interstate Commerce Commission (ICC) instead of the FMC. The two Commissions have separate jurisdictions, the FMC governing port-to-port water carriers and the ICC governing intermodal (e.g., rail-and-water) carriers. *See* 46 U.S.C.App. §§ 801, 832, & 845b.

On March 9, 1990, an administrative law judge granted Guam leave to amend the Commission complaint to add four shippers as plaintiffs. Three of those shippers are among the plaintiffs in the present case. In the same ruling, the ALJ dismissed that portion of the complaint seeking reparations on behalf of all similarly situated Guam shippers under a *parens patriae* theory. In so ruling, the ALJ relied on Commission decisions holding that reparations may be awarded only to those who have actually paid unreasonable rates unless there has been a valid assignment from one with a legal right to reparations. The Commission proceeding is presently ongoing.

Plaintiffs' complaint was filed in this Court on March 10, 1992. Plaintiffs' asserted purpose in bringing this action in court is to "toll" the two-year statute of limitations for the numerous Guam shippers that have allegedly been injured by defendants' shipping rates. They have thus moved for certification of a class consisting of shippers and persons who have dispatched or received shipments into or out of Guam via the defendant carriers. At the same time, plaintiffs have moved for a stay of proceedings in this case pending the Commission's determination in the parallel administrative proceeding. Plaintiffs thus concede that the Commission has the task of resolving the merits of the dispute; they call on this Court essentially to preserve, and ultimately to administer, the claims of the class.

of (1) §§ 16 First, 17, and 18(a) of the Shipping Act, 1916, 46 U.S.C. app. §§ 815 First, 816, & 817(a) (1988), and (2) § 2 of the Intercoastal Shipping Act, 1933, 46 U.S.C. app. § 844 (1988). In this opinion we refer to the former statute as the Shipping Act and to both acts as the Shipping Acts.

*Guam I, supra,* 809 F.Supp. at 151–52. We write to emphasize two points.

## II.

■ *Implying a private cause of action where the statute provides a remedy.* Appellants concede that the Shipping Acts do not expressly provide for a private federal cause of action by a shipper to challenge a carrier's rates, but they contend that the district court erred in declining to infer, upon applying the factors in *Cort v. Ash,* 422 U.S. 66, 95 S.Ct. 2080, 45 L.Ed.2d 26 (1975), a protective cause of action on behalf of the Guam shippers as a class. Appellants maintain that Congress intended such a private cause of action because an analogous proceeding is impermissible before the Federal Maritime Commission and the only available way for the Guam shippers to obtain recovery is by a class action in district court.

Where a statute provides an express remedy, *Cort v. Ash* is, strictly speaking, inapplicable. In that case, the Supreme Court stated that "[i]n determining whether a private remedy is implicit in a statute not expressly providing one, several factors are relevant."[4] 422 U.S. at 78, 95 S.Ct. at 2088. There, the Court faced the issue of whether a stockholder's derivative suit for damages against corporate directors could be implied under a criminal statute prohibiting corporations from making contributions in connection with Presidential elections. *Id.* at 68, 95 S.Ct. at 2083–84. The Court held that "implication of such a federal cause of action is not suggested by the legislative context of [the criminal provision] or required to accomplish Congress' purposes in enacting the [Federal Election Campaign Act]." *Id.* at 68–69, 95 S.Ct. at 2084. Thus, because the Shipping Acts provide appellants with an express reparations remedy before the Federal Maritime Commission, *see* 46 U.S.C. app. §§ 821(a), 845a, the district court concluded that the *Cort* analysis did not appear to be directly applicable to appellants' claim that appellee

carriers had violated the provisions of the Shipping Acts requiring "just and reasonable rates." *Guam I, supra,* 809 F.Supp. at 153.

Yet, as our opinion in *Danielsen v. Burnside–Ott Aviation Training Ctr., Inc.,* 941 F.2d 1220, 1227–28 (D.C.Cir.1991), recognizes, the *Cort v. Ash* factors are relevant in determining whether the express remedy provided in a statute was intended by Congress to be the exclusive remedy. The *Danielsen* court noted with approval the Ninth Circuit's application of the *Cort* test in determining whether a private civil right of action could be inferred under the Service Contract Act, 41 U.S.C. § 351, which itself provided an administrative remedy. *Id.* (citing *Miscellaneous Serv. Workers, Local # 427 v. Philco–Ford Corp.,* 661 F.2d 776, 780–81 (9th Cir. 1981)). This court agreed that implication of a private right would undercut the specific administrative remedy prescribed by Congress in that statute. *Id.* at 1228.

More precisely, the Supreme Court has made clear that when Congress has provided an express remedy, not all of the *Cort* factors have the same weight because the central analysis is directed at discovering legislative intent by means of "the language of the statute, the statutory structure, or some other source." *Karahalios v. National Fed'n of Fed. Employees, Local 1263,* 489 U.S. 527, 532–33, 109 S.Ct. 1282, 1286–87, 103 L.Ed.2d 539 (1989) (quoting *Thompson v. Thompson,* 484 U.S. 174, 179, 108 S.Ct. 513, 516, 98 L.Ed.2d 512 (1988) (in turn quoting *Northwest Airlines, Inc. v. Transport Workers,* 451 U.S. 77, 94, 101 S.Ct. 1571, 1582, 67 L.Ed.2d 750 (1981))); *Transamerica Mortgage Advisors, Inc. v. Lewis,* 444 U.S. 11, 23–24, 100 S.Ct. 242, 248–49, 62 L.Ed.2d 146 (1979) (citing *Touche Ross & Co. v. Redington,* 442 U.S. 560, 575–76, 99 S.Ct. 2479, 2488–89, 61 L.Ed.2d 82 (1979)). Where Congress has provided an express remedy, the Court has explained, "[t]he presumption that a remedy was deliberately omitted from a statute is strongest when Congress has enacted a com-

---

4. In *Cort v. Ash,* the Supreme Court identified four factors: (1) whether the plaintiff is part of "the class for whose *especial* benefit the statute was enacted"; (2) the evidence of "legislative intent, explicit or implicit, either to create such a remedy or to deny one"; (3) whether inferring

such a right is "consistent with the underlying purposes of the legislative scheme"; and (4) whether the cause of action is one traditionally relegated to state law. 422 U.S. at 78, 95 S.Ct. at 2087.

prehensive legislative scheme including an integrated system of procedures for enforcement." *Massachusetts Mut. Life Ins. Co. v. Russell,* 473 U.S. 134, 147, 105 S.Ct. 3085, 3092–93, 87 L.Ed.2d 96 (1985) (quoting *Northwest Airlines, Inc. v. Transport Workers, supra,* 451 U.S. at 97, 101 S.Ct. at 1584). While this presumption may be overcome without evidence that Members of Congress actually had in mind the creation of a private cause of action, *see Thompson v. Thompson, supra,* 484 U.S. at 179, 108 S.Ct. at 516, and *California v. Sierra Club,* 451 U.S. 287, 293, 101 S.Ct. 1775, 1778–79, 68 L.Ed.2d 101 (1981), rebutting the presumption is not easily accomplished given the "elemental canon" of statutory construction that "where a statute expressly provides a remedy, courts must be especially reluctant to provide additional remedies." *Karahalios v. National Fed'n of Fed. Employees, supra,* 489 U.S. at 533, 109 S.Ct. at 1286 (citing *Transamerica Mortgage Advisors, Inc. v. Lewis, supra,* 444 U.S. at 19, 100 S.Ct. at 246–47). " '[I]n the absence of strong indicia of contrary congressional intent, [the Court is] compelled to conclude that Congress provided precisely the remedies it considered appropriate.' " *Id.* (quoting *Middlesex County Sewerage Auth. v. Sea Clammers,* 453 U.S. 1, 15, 101 S.Ct. 2615, 2623, 69 L.Ed.2d 435 (1981)).

Accordingly, in the instant case, the district court concluded, upon examining the statutory scheme in the Shipping Acts and the different language in the Interstate Commerce Act, that in the absence of evidence of congressional intent to imply a cause of action, the conclusion was compelled, under *California v. Sierra Club, supra,* 451 U.S. at 293, 101 S.Ct. at 1778–79, that no implied right of action should be inferred. *Guam I, supra,* 809 F.Supp. at 153–54. In addition, the district court noted that under the *Cort* factors, *see supra* note 4, the first and third factors did not lend weight to appellants' argument and that appellants had not offered any supporting legislative history. *Id.* at 153 n. 4.

We find no error in the district court's analysis. First, the Shipping Acts include a specific reparations remedy. *See* 46 U.S.C. app. §§ 821(a), 845a. Second, the statutes provide for enforcement proceedings in the district court. *See* 46 U.S.C. app. §§ 828 & 829; *Massachusetts Mut. Life Ins. Co. v. Russell, supra,* 473 U.S. at 147, 105 S.Ct. at 3092–93. Third, although modeled after the Interstate Commerce Act, the Shipping Acts do not include a provision, which is in the Interstate Commerce Act, providing for a district court cause of action as an alternative to the administrative proceeding. *See* 49 U.S.C. § 11705(c)(1); *United States Navigation Co. v. Cunard S.S. Co.,* 284 U.S. 474, 481, 52 S.Ct. 247, 249, 76 L.Ed. 408 (1932). Under the analysis in *Karahalios v. National Fed'n of Fed. Employees, supra,* 489 U.S. at 532–33, 109 S.Ct. at 1286–87, these provisions together reinforce the conclusion that an implied right cannot be inferred because Congress provided for rate regulation in an administrative agency and specified the circumstances in which it intended for there to be a federal cause of action.[5] *See T.I.M.E. Inc. v. United States,* 359 U.S. 464, 469, 79 S.Ct. 904, 908, 3 L.Ed.2d 952 (1959) ("reasonable rates" provision creates criterion for administrative determination of lawful rate rather than a justiciable legal right) (citing *Montana–Dakota Utils. Co. v. Northwestern Pub. Serv. Co.,* 341 U.S. 246, 251, 71 S.Ct. 692, 695, 95 L.Ed. 912 (1951)). A contrary conclusion would undermine the statutory scheme. Paraphrasing a statement by the Supreme Court in analogous circumstances, "[o]nly through the action of [the Federal Maritime Commission] could there be secured the uniformity of ruling upon which appropriate protection from unreasonable exactions and unjust discriminations must depend." *United States Navigation Co. v. Cunard S.S. Co., supra,* 284 U.S. at 483, 52 S.Ct. at 250 (referring to the Interstate Commerce Act and quoting *Board of R.R. Comm'rs v. Great N. Ry. Co.,* 281 U.S. 412, 421–22, 50 S.Ct. 391,

---

**5.** Appellants' contention that the district court erred in applying the doctrine of primary jurisdiction is meritless. That doctrine does not create jurisdiction where none otherwise exists. *See*

*United States v. Bessemer & Lake Erie R.R. Co.,* 717 F.2d 593, 599 (D.C.Cir.1983); *see also Johnson v. Nyack Hosp.,* 964 F.2d 116, 122 (2d Cir. 1992).

393–94, 74 L.Ed. 936 (1930)).[6]

■ Application of the *Cort* factors leaves appellants in no better position. Even assuming that they meet the first and third *Cort* factors—if appellants are within the class for whose benefit the Shipping Acts were enacted and if inferring a private cause of action is consistent with the underlying purposes of the legislative scheme—appellants point to no legislative history or other source to suggest that Congress intended to imply an additional remedy to the express administrative remedy it provided (the second *Cort* factor) in the Shipping Acts. Appellants have the burden to show some evidence of congressional intent to create a remedy in addition to that expressly provided, *Suter v. Artist M.,* —— U.S. ——, 112 S.Ct. 1360, 1370, 118 L.Ed.2d 1 (1992), and it is not enough simply to argue that there is nothing in the legislative history that could reasonably be construed to deny creation of an implied private federal district court action for Shipping Act violations. *See Touche*

*Ross & Co. v. Redington, supra,* 442 U.S. at 571, 99 S.Ct. at 2486–87 ("implying a private right of action on the basis of congressional silence is a hazardous enterprise, at best"). Moreover, appellees point with some persuasive force to the legislative history of the Shipping Act as indicating an implicit rejection by Congress of a judicial damages remedy for shippers.[7] Consequently, the district court could properly conclude that application of the *Cort* factors is unlikely to warrant the inference of a private right of action under the Shipping Acts. *Guam I, supra,* 809 F.Supp. at 153 n. 4.

Appellants' contention that their position does not involve an attempt to "usurp" the authority of the Federal Maritime Commission is beside the point. Appellants consider the administrative remedy inadequate because of (1) the costs to individual shippers in an administrative proceeding attacking an entire tariff structure, as distinct from a proceeding seeking reparations for overcharges on a particular cargo shipment, (2)

6. Appellants mistakenly suggest that *Cort v. Ash, supra,* discarded statute comparison as a method of gleaning congressional intent. In *Cort,* the Supreme Court simply found the statutory comparison before it to be unhelpful. *Cort v. Ash, supra,* 422 U.S. at 82–83 n. 14, 95 S.Ct. at 2090 n. 14; *see also Karahalios v. National Fed'n of Fed. Employees, supra,* 489 U.S. at 534–35, 109 S.Ct. at 1287–88.

7. Appellees maintain that "[p]rior to enactment of the Shipping Act, several bills were introduced and considered that would have given express rights to sue for damages caused by violations of the Act, yet these provisions were rejected in favor of the administrative remedy ultimately enacted into law." *See* H.R. 17328, 63d Cong., 2d Sess. § 19 (June 18, 1914); H.R. 450, 64th Cong., 1st Sess. § 19 (Dec. 6, 1915) (reintroducing H.R. 17328); H.R. 14337, 64th Cong., 1st Sess. §§ 12, 14 (Apr. 7, 1916); and H.R. 10500, 64th Cong., 1st Sess. § 9 (Jan. 31, 1916). Each of these bills provided for a district court damages action. Appellees rely, therefore, on the fact that while Congress incorporated a number of provisions from these bills into final enactment, it did not incorporate the provisions providing a district court damages action.

The legislative history indicates that Congress decided to create a separate shipping board "vested with such powers [as the Interstate Commerce Commission has]" rather than extend the jurisdiction of the Interstate Commerce Commission to common carriers. *See* H.R. REP. No. 659, 64th Cong., 1st Sess. 32 (1916); HOUSE COMM. ON

THE MERCHANT MARINE AND FISHERIES, REPORT ON STEAMSHIP AGREEMENTS AND AFFILIATIONS IN THE AMERICAN AND DOMESTIC TRADE, H.R.DOC. No. 805, 63d Cong., 2d Sess. 422 (1914) (the Alexander Report). Congress omitted from the Shipping Act a provision comparable to one in the Interstate Commerce Act providing shippers a private federal cause of action as an alternative to an administrative proceeding. *See* 49 U.S.C. § 9 (1959). To this extent, the omission suggests that Congress implicitly rejected the idea of a private remedy under the Shipping Act. *See United States Navigation Co. v. Cunard S.S. Co., supra,* 284 U.S. at 481, 52 S.Ct. at 249 (Congress intended Shipping Act and Interstate Commerce Act "should have like interpretation, application and effect," unless "there be something peculiar in the question under consideration, or dissimilarity in the terms of the [the two acts] requir[es] a different conclusion"); *id.* at 484, 52 S.Ct. at 250. *Compare Massachusetts Mut. Life Ins. Co. v. Russell, supra,* 473 U.S. at 146, 105 S.Ct. at 3092 (refusing to base legislative intent on committee reports describing version of the Employee Retirement Income Security Act of 1974 before floor debate and before Senate–House conferees had "finalized the operative language") *with Karahalios v. National Fed'n of Fed. Employees, supra,* 489 U.S. at 533–34, 109 S.Ct. at 1286–87 (unsuccessful legislative effort to authorize private litigation demonstrated congressional intent not to create a private cause of action in legislation passed as Civil Service Reform Act of 1978).

the two-year statute of limitations in the face of a proceeding that has been going on for more than three years, and (3) the unavailability of class action or *parens patriae* administrative procedures. Whether procedural inadequacies exist in the administrative proceeding can be addressed on appeal from a final order of the Federal Maritime Commission, as appellants acknowledge. Further, as appellants' colloquy with the district court regarding the possibility of a class action before the Commission makes clear, their contention that the remedies under the Shipping Acts are unavailable to the Guam shippers is still to be demonstrated.[8] Indeed, were there evidence that the administrative proceedings could not adapt to what appellants characterize as a proceeding that is unique in scope, such considerations would not overcome the absence of evidence that

Congress intended to imply the existence of a private protective cause of action in anticipation of a favorable administrative ruling on behalf of a class. *See Saltzman v. Farm Credit Servs. of Mid–America, ACA,* 950 F.2d 466, 469 (7th Cir.1991) (citing *California v. Sierra Club, supra,* 451 U.S. at 297, 101 S.Ct. at 1781); *cf. Centel Cable Television Co. of Fla. v. Admiral's Cove Assocs., Ltd.,* 835 F.2d 1359, 1362–63 (11th Cir.1988).

Many of the cases relied on by appellants for inferring a cause of action were decided before *Cort v. Ash, supra,* (1975), and *Karahalios v. National Fed'n of Fed. Employees, supra,* (1989), where the Supreme Court made clear its shift in emphasis from its prior standard to evidence of congressional intent to imply a private cause of action.[9] Other cases are readily distinguishable.[10]

8. The district court suggested to appellants' counsel that there could be representation of other shippers by appellants' counsel, and that equitable and other remedies could be a part of the administrative proceedings, including requesting that the Guam shippers be certified as a class before the administrative agency. Noting that appellants' counsel had not asked the administrative agency for class relief, the district court observed that although the agency rules were silent on class relief, there was nothing to prohibit it. Appellants' counsel did not dispute that these possibilities could be pursued in the administrative proceedings, but counsel focused on the burden of notifying all Guam shippers in addition to the three points noted in the text of this opinion. In their brief on appeal, appellants acknowledge the possibility of assignment of claims.

9. Thus, *Wyandotte Transp. Co. v. United States,* 389 U.S. 191, 200–01, 88 S.Ct. 379, 385–86, 19 L.Ed.2d 407 (1967), *J.I. Case Co. v. Borak,* 377 U.S. 426, 434, 84 S.Ct. 1555, 1560–61, 12 L.Ed.2d 423 (1964), and *Texas & Pacific Ry. Co. v. Rigsby,* 241 U.S. 33, 39–40, 36 S.Ct. 482, 484–85, 60 L.Ed. 874 (1916), indicating that a statutory provision for an express remedy enhanced the possibility that other private causes of action would be inferred, are irrelevant in light of the shift in the Supreme Court's position. Their context is distinguishable as well. *See Wyandotte Transp. Co. v. United States, supra,* 389 U.S. at 204, 88 S.Ct. at 387 (suit by United States to recover costs of removing negligently sunk vessel: congressional intent not to withhold a remedy that ensures full effectiveness of Rivers and Harbors Act of 1899); *J.I. Case Co. v. Borak,* 377 U.S. at 432, 84 S.Ct. at 1559–60 (§ 27 of Securities Exchange Act of 1934 authorizes federal cause of action for rescission or damages by stockholder with regard to merger authorized by

proxy statement alleged to contain false and misleading statements violative of § 14 of the Act: "[p]rivate enforcement of the proxy rules provides a necessary supplement to Commission action"); *Texas & Pacific Ry. Co. v. Rigsby, supra,* 241 U.S. at 39, 36 S.Ct. at 484 (safety of employees and travelers principal object of statutes at issue, and right of private action by injured employee, even without Employers' Liability Act, never doubted).

10. *Maritime Serv. Corp. v. Sweet Brokerage De Puerto Rico, Inc.,* 537 F.2d 560, 562 (1st Cir. 1976), and *Sea–Land Serv., Inc. v. Murrey & Son's Co.,* 824 F.2d 740, 741 (9th Cir.1987), cited by appellants, involved implied rights of action for *carriers* under the Shipping Acts. *See Guam I, supra,* 809 F.Supp. at 154 (§ 22(a) of the Shipping Act provides no remedy for carriers, in contrast to the express remedy for shippers). Both cases note that the Supreme Court had found an implied private cause of action for carriers under the Interstate Commerce Act, on which the Shipping Act was modeled, before the Interstate Commerce Act was amended to provide carriers with an express remedy. *Maritime Serv. Corp. v. Sweet Brokerage De Puerto Rico, Inc., supra,* 537 F.2d at 563; *Sea–Land Serv., Inc. v. Murrey & Son's Co., supra,* 824 F.2d at 743. Appellants also cite *Orleans Materials and Equip. Co. v. Isthmian Lines, Inc.,* 213 F.Supp. 325, 331 (E.D.La.1963) (*Orleans I*) (Federal Maritime Commission has primary jurisdiction, court retains jurisdiction), and *Orleans Materials and Equip. Co. v. Isthmian Lines, Inc.,* 218 F.Supp. 322, 324 (E.D.La.1963) (on rehearing) (*Orleans II*) (contract claims presented federal question under 28 U.S.C.A. § 1357), which we do not find persuasive authority because, for example, they involved claims under contracts, not challenges to the reasonableness of rates. *See also Nepera*

Contrary to appellants' contention, nothing suggests that the parties' failure in *Karahalios v. National Fed'n of Fed. Employees, supra*, to pursue their administrative remedies prior to bringing suit in court was a relevant consideration in the Supreme Court's decision not to infer a private cause of action; rather, the Court's conclusion was based on the lack of evidence of congressional intent. 489 U.S. at 532–33, 536, 109 S.Ct. at 1286–87, 1288–89. Furthermore, we agree with the district court, *Guam I, supra*, 809 F.Supp. at 154, and appellees, that *D.L. Piazza Co. v. West Coast Line, Inc.*, 210 F.2d 947 (2d Cir.), *cert. denied*, 348 U.S. 839, 75 S.Ct. 42, 99 L.Ed. 661 (1954) (*Piazza*), is most clearly on point. In that case, after losing before the Federal Maritime Board, the Piazza company sued in federal district court for the same amount of reparations sought in the administrative proceeding. *Piazza, supra*, 210 F.2d at 948. The Second Circuit, noting that the Supreme Court had held that exclusive primary jurisdiction over recovery of reparations under the Shipping Act is in the Federal Maritime Board, held that the company's only remedy was that in the statute, namely review of the Board's decision by the court of appeals. *Id.* Appellants' argument that *Piazza* is no longer good law is unpersuasive.[11] Their reliance on *Interconex, Inc. v. Federal Maritime Comm'n*, 572 F.2d 27 (2d Cir.1978), is misplaced because the *Piazza* issue was not before the court.[12]

Accordingly, we affirm the district court's dismissal of appellants' complaint for lack of subject-matter jurisdiction.

### III.

 *Amending a complaint.* Appellants also contend that the district court erred in dismissing the complaint without affording them an opportunity to amend. With such an opportunity, they maintain that they could

---

*Chemical, Inc. v. Sea–Land Serv., Inc.*, 794 F.2d 688, 692–93 (D.C.Cir.1986) (shipper's common law negligence action against common carrier not barred by statutory rate-correction procedure; relying on five considerations of *Hewitt–Robins, Inc. v. Eastern Freight–Ways, Inc.*, 371 U.S. 84, 83 S.Ct. 157, 9 L.Ed.2d 142 (1962)).

**11.** There is no merit to appellants' contention that *Carnation Co. v. Pacific Westbound Conference*, 383 U.S. 213 & 932, 86 S.Ct. 781, 15 L.Ed.2d 709 (1966) (antitrust treble damages action), disavowed the holdings in *United States Navigation Co. v. Cunard S.S. Co., supra*, 284 U.S. 474, 52 S.Ct. 247, and *Far East Conference v. United States*, 342 U.S. 570, 72 S.Ct. 492, 96 L.Ed. 576 (1952)—on which the Second Circuit relied in *Piazza, supra*, 210 F.2d at 948—that actions for reparations from violations of the Shipping Act lie within the "exclusive primary jurisdiction" of the Federal Maritime Commission. In *Carnation* the Court was addressing reconciliation of the antitrust laws with the antitrust exemption in the Shipping Act. Indeed, the Court itself found no conflict with *Cunard, supra*, 284 U.S. at 484, 52 S.Ct. at 250, and *Far East, supra*, 342 U.S. at 573–76, 72 S.Ct. at 493–95. *Carnation Co. v. Pacific Westbound Conference, supra*, 383 U.S. at 220, 222, 86 S.Ct. at 785–86, 787. Nor can *Carnation* be read, as appellants suggest, as authority for the general proposition that in the absence of an express judicial remedy, where rights would be lost as a result of a statute of limitations bar, the district court must retain jurisdiction in order to toll the limitations period. In *Carnation*, the plaintiffs were proceeding under the antitrust statutes, which provided judicial remedies. *See Carnation Co. v. Pacific Westbound Conference*, 336 F.2d 650, 651 n. 1 (9th Cir.1964). Similarly, the contract actions over which the district court and the Federal Maritime Commission have concurrent jurisdiction, *see Firearms Import & Export Corp. v. Lykes Bros. S.S. Co.*, 458 F.Supp. 88, 90 (S.D.Fla.1978) (admiralty action to recover affreightment overcharges); *Orleans I, supra* note 10, 213 F.Supp. at 329, do not support appellants' contention that *Piazza* is no longer good law; those cases involve contract causes of actions that predate, and were not preempted by, the Shipping Acts, not claims that tariffs are unlawful under the Shipping Acts' reasonable-rate regulatory scheme.

**12.** The underlying claim in *Interconex, Inc. v. Federal Maritime Comm'n, supra*, 572 F.2d 27, was that Interconex, a carrier, applied the wrong tariff rate because of its own alleged misstatements regarding the weights and measures of certain shipments. 572 F.2d at 28. The order under review was a final order of the Federal Maritime Commission dismissing Interconex's claim against a third carrier, which Interconex had engaged to transport the cargo. *Id.* The issue of subject-matter jurisdiction over shippers' suits for reparations was never before the court. Although there is dictum in *Interconex* that "it would have been possible for Interconex to file a protective action" in district court, *id.* at 29, as appellees point out, that action would have been similar to the admiralty action in *Firearms Import & Export Corp. v. Lykes Bros. S.S. Co., supra* note 11, 458 F.Supp. 88, or the contract action in *Orleans I, supra* note 10, 213 F.Supp. 325, not the reparations suit in the instant case.

have added new legal theories under the Interstate Commerce Act, *see* 49 U.S.C. § 10701(a), and in admiralty, pursuant to 28 U.S.C. § 1333.

The complaint purported to state a cause of action under the Shipping Acts, exclusively. However, in their opposition to the motion to dismiss, appellants stated that if the Federal Maritime Commission were to agree with one of the carriers that it was subject to the jurisdiction of the Interstate Commerce Commission, then appellants would amend their complaint to add a claim under the Interstate Commerce Act and a claim in admiralty.[13] Likewise, during argument on the motion to dismiss, appellants' counsel indicated that their interest in pursuing other legal theories rested on a future ruling by the Federal Maritime Commission and the court of appeals.[14]

"The normal procedure for requesting an amendment to the complaint in federal court is to file a FED.R.CIV.P. 15 motion to amend together with the proposed amendment or new pleading."[15] *Bank of Waunakee v. Rochester Cheese Sales, Inc.*, 906 F.2d 1185, 1192 (7th Cir.1990); 3 JAMES W. MOORE & RICHARD D. FREER, MOORE'S FEDERAL PRACTICE ¶ 15.12, at 15–115 to 15–116 (2d ed. 1994). Because appellants had not previously amended their complaint and a motion to dismiss is not ordinarily considered a "responsive pleading" under Rule 15(a), appellants were free to amend the complaint as a matter of right prior to the district court's ruling on the motion to dismiss. *See Confederate Memorial Ass'n, Inc. v. Hines*, 995 F.2d 295, 299 (D.C.Cir.1993).

Appellants' counsel did not file a motion to amend the complaint, nor did they submit an amended complaint to the district court. The district court's remarks during argument, expressing doubts about appellants' theory of an implied cause of action under the Shipping Acts, put appellants on notice of the need to amend the complaint if they wanted new theories to be considered by the district court.[16] Yet, appellants' counsel did not advise the district court of their readiness to amend the complaint, even in the face of appellees' counsel's reference during argument to the fact that appellants had not amended either their administrative complaint or their district court complaint to state a claim under the Interstate Commerce Act. Under these circumstances, we conclude that neither appellants' opposition to the motion to dismiss, nor their counsel's reference to the assertion of new legal theories contingent on future administrative action, was sufficient to constitute a motion under Rule 15(a) to amend the complaint. *See Glenn v. First Nat'l Bank in Grand Junction*, 868 F.2d 368, 370 (10th Cir.1989); *cf. Kowal v. MCI Communications Corp.*, 16 F.3d 1271, 1280 (D.C.Cir.1994) (citing FED. R.CIV.P. 7(b) and quoting *Confederate Me-*

---

13. The concluding paragraph of appellants' opposition to the motion to dismiss also stated that: plaintiffs can and will amend their Complaint, if necessary, to assert additional claims, under different legal theories, which are indisputably within this Court's jurisdiction. If there is *any* doubt about this Court's jurisdiction over the claims already pled, therefore, plaintiffs request that the motion be denied on the condition that plaintiffs amend their Complaint *as discussed above*. *See Friedlander v. Nims*, 755 F.2d 810 (11th Cir.1985) (first emphasis in original; second emphasis added).

14. Appellants' counsel twice stated that appellants wanted the district court to deny appellees' motion to dismiss or, alternatively, "to stay the case, and to await a determination by the [Federal Maritime Commission] as to an issue that could clearly give us a jurisdictional basis to proceed before the court."

15. FED.R.CIV.P. 15(a) provides:

A party may amend the party's pleading once as a matter of course at any time before a responsible pleading is served or, if the pleading is one to which no responsive pleading is permitted and the action has not been placed upon the trial calendar, the party may so amend it at any time within 20 days after it is served. Otherwise a party may amend the party's pleading only by leave of court or by written consent of the adverse party; and leave shall be freely given when justice so requires.

16. Appellants' reliance on *Thomas W. Garland, Inc. v. City of St. Louis*, 596 F.2d 784, 787 (8th Cir.), *cert. denied*, 444 U.S. 899, 100 S.Ct. 208, 62 L.Ed.2d 135 (1979), is misplaced because the Eighth Circuit was not addressing the amendment issue, and it did not suggest that the district court must search for legal theories favorable to the plaintiffs that are not mentioned in the complaint.

*morial Ass'n, Inc. v. Hines, supra*, 995 F.2d at 299).

Appellants also did not seek leave to amend their complaint after the district court granted appellees' motion to dismiss; instead appellants filed a notice of appeal. *See Confederate Memorial Ass'n, Inc. v. Hines, supra*, 995 F.2d at 299; *see also Glenn v. First Nat'l Bank in Grand Junction, supra*, 868 F.2d at 371; *National Petrochemical Co. of Iran v. M/T Stolt Sheaf*, 930 F.2d 240, 245 (2d Cir.1991). Appellants offer no explanation for not seeking leave to amend. *See Twohy v. First Nat'l Bank of Chicago,* 758 F.2d 1185, 1196 (7th Cir.1985); *cf. Bank of Waunakee v. Rochester Cheese Sales, Inc., supra*, 906 F.2d at 1192. However, their failure to seek leave to amend is consistent with their counsel's representations to the district court that appellants' interest in amending the complaint was tied to future administrative action.

Appellants, further, have not suggested why an exception to the general rules favoring the finality of judgments and the expeditious resolution of litigation should be made in their case.[17] While our approach need not be inflexible,[18] appellants offer no reason for not following the normal course for amending a complaint, and we are confronted with a record showing that their interest in amending the complaint rested on a future contingency that has yet to occur. Accordingly, we hold that appellants have waived the right to raise the amendment claim of error on appeal, *see The Dartmouth Review v. Dartmouth College, supra* note 18, 889 F.2d at 22–23; *see also Kowal v. MCI Communications Corp., supra*, 16 F.3d at 1280 (citing *Confederate Memorial Ass'n, Inc. v. Hines, supra*, 995 F.2d at 299), and they have failed to show that they are entitled to a remand by this court to permit them to seek leave to amend. *See Royal Business Group, Inc. v. Realist, Inc., supra* note 18, 933 F.2d at 1066;

3 MOORE, *supra*, at 15–109 to 15–110; 6 WRIGHT, *supra* note 17, at 698.

*Affirmed.*

---

**17.** *See National Petrochemical Co. of Iran v. M/T Stolt Sheaf, supra*, 930 F.2d at 245; *Glenn v. First Nat'l Bank in Grand Junction, supra*, 868 F.2d at 371; 6 CHARLES A. WRIGHT, ET AL, FEDERAL PRACTICE AND PROCEDURE § 1489, at 694 (2d ed. 1990).

**18.** *See, e.g., The Dartmouth Review v. Dartmouth College*, 889 F.2d 13, 23 (1st Cir.1989) (recognizing "long-odds exception" allowing amendment after appeal where "[j]ustice ... requires further proceedings") (quoting *Rivera–Gomez v. de Castro*, 843 F.2d 631, 635–36 (1st Cir.1988)); *see also Royal Business Group, Inc. v. Realist, Inc.*, 933 F.2d 1056, 1066 (1st Cir.1991); *Powers v. Boston Cooper Corp.*, 926 F.2d 109, 111 (1st Cir.1991).